IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                         CASE NO. 5:12-cr-5-RS

TROY ANTHONY COLEMAN,

       Defendant.
_____/

## ORDER

On June 20, 2012, a hearing was held on Defendant's Motion to Suppress (Doc. 212). After considering the testimony of the witnesses and arguments from counsel, Defendant's motion is **DENIED**.

### Background

*January 19th Arrest*

On January 18, 2012, Sergeant Jason Daffin of the Criminal Investigations Division of the Bay County Sheriff's Department ("BCSD") filed a criminal complaint charging Defendant with Felony Criminal Mischief. County Court Judge Thomas Welch signed and issued a felony arrest warrant the same day. Sgt. Daffin informed Investigator Ray Scott ("Scott") that he had obtained the arrest warrant for Defendant.

Scott set up surveillance of Defendant's residence on the evening of January 18th, however, he was unable to identify the Defendant and did not execute the arrest warrant.  On January 19, 2012, Scott and other members of the Narcotics Division of BCSD again conducted surveillance of Defendant's residence to execute the arrest warrant.  While conducting surveillance, Scott observed a brown vehicle arrive at Defendant's residence and observed Defendant exit his residence, approach the vehicle, conduct what appeared to be a drug transaction, and return to his house.

Scott and the other officers moved in to arrest Defendant, but when Defendant saw the officers, he ran back into the residence.  Officers entered the house to search for Defendant.  Investigator Nick Van Strander ("Van Strander") searched the first floor for Defendant and found him in the kitchen.  At the same time, Scott searched the second floor for Defendant.  Scott returned to the first floor and observed marijuana and marijuana residue on the living room table in plain view.

Scott called Investigator Jamie Young ("Young"), who was not present at the scene, and asked Young to prepare a search warrant and affidavit to search Defendant's residence based on Scott's observations.  After preparing the warrant and affidavit, Young called Scott and read what he had written to confirm its accuracy.  The search warrant and affidavit were reviewed and issued by Judge

2

Welch. The search warrant was executed, and investigators discovered and seized, among other things, various types of controlled substances, drug paraphernalia, and a loaded firearm.

*May 2nd Vehicle Seizure and Search*

Around September 2011, the United States Drug Enforcement Agency ("DEA") began investigating a drug-trafficking organization, known as the Knowles Drug-Trafficking Organization ("Knowles DTO"). This organization acquired, transported, and distributed cocaine in the Bay County, Florida area. Twelve people were indicted, including Defendant, in this case for their involvement with the Knowles DTO.

Following indictment in this case, a federal arrest warrant was issued for Defendant on April 20, 2012. On May 2, 2012, DEA and other law enforcement agencies attempted to arrest Defendant. Panama City Police Department Sergeant Dave Blaich ("Blaich") established surveillance on Coleman's mother's residence. Blaich observed Coleman arrive at the residence in a white Chevrolet Impala registered to Defendant. Defendant went inside the house. Blaich and other officers surrounded the house in order to execute the arrest warrant. When Blaich and investigator Chris Nichols ("Nichols") approached the front door, Defendant's dog was barking and growling at the officers. While officers attempted to subdue

the dog, Defendant fled out of the back of the house, over the fence, and down the street.

While officers searched for Defendant, Nichols contacted DEA special agent Brian Lammers ("Lammers") about Defendant's vehicle. From the investigation into the Knowles DTO, Lammers knew that Defendant drove the Impala when dropping off drug proceeds to and picking narcotics up from Knowles and Walker, two co-defendants. Based on this information, Lammers informed Nichols that DEA was going to seize the Impala.

When Nichols approached the vehicle, he testified that he could smell a strong odor of marijuana emanating from the vehicle. Panama City Sergeant Manny Gonzalez ("Gonzalez") also smelled the marijuana coming from the Impala. Nichols and Gonzalez attempted to unlock the vehicle using a slim jim. While doing so, they were able to see marijuana in a plastic bag in the driver's side door pocket through the windshield. A tow truck driver had to be called to unlock the Impala, and once it was unlocked, investigators seized narcotics and inventoried the vehicle before it was towed to DEA's Panama City office.

## Analysis

### *January 19th Arrest*

Scott and other law enforcement officers conducted surveillance and executed an arrest warrant for felony criminal mischief when they obtained a

search warrant for the residence based on marijuana in plain view. Defendant contends that the affidavit for the arrest warrant lacked sufficient probable cause for the warrant to be valid; therefore, law enforcement should not have been at the residence to see the marijuana to get the search warrant.

It is well-established by case law that as long as law enforcement officers rely in good faith upon a facially valid arrest warrant, then evidence obtained from the execution of the warrant will not be suppressed. *United States v. Leon*, 468 U.S. 897 (1984)(Court did not exclude drug-trafficking evidence even when the affidavit for the search warrant did not establish probable cause because officers relied in good faith upon the warrant.); *see also Arizona v. Evans*, 514 U.S. 1 (1995)(Police officers acted in good faith reliance on a computer printout that indicated an outstanding arrest warrant for the defendant. The evidence obtained as a result of the arrest will not be suppressed, even if the printout was erroneous.). Because Scott and other law enforcement personnel relied in good faith upon a facially valid arrest warrant, they were able to see the marijuana and obtain a search warrant. The evidence seized resulting from the execution of the search warrant will not be excluded.

*May 2nd Vehicle Seizure and Search*

Defendant also argues that law enforcement had no legal basis to search his vehicle and all evidence seized should be suppressed. The Government argues two

bases for legally searching the Impala: (1) the vehicle was forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(4) and (2) the automobile exception to the Fourth Amendment.

Forfeiture

Pursuant to 21 U.S.C. § 881(a)(4), all vehicles that are used, or are intended for use, to transport or to facilitate the transportation, sale, receipt, possession , or concealment of controlled substances shall be subject to forfeiture to the United States and no property rights shall exist in those vehicles.  The Knowles DTO investigation provided Lammers with information that Defendant used his Impala to transport controlled substances and proceeds from drug trafficking.  Based on this information from two co-defendants interviewed independently from one another, DEA had probable cause to believe that that Impala was used to facilitate drug trafficking.  *See United States v. Valdes,* 876 F.2d 1554 (11th Cir. 1989).

Courts have consistently upheld the warrantless seizure of an automobile where there was probable cause to believe the vehicle was subject to forfeiture, and it was found in a public place. *Id.* at 1558-60.  In this case, the Impala was parked in a driveway that was not enclosed by any fence or gate, and nothing obscured the view of the driveway.  To get to the front door of the residence, a person would have to walk through the driveway.  Therefore, the driveway was not part of the residence's curtilage and was in a public place for seizure. *United States v.*

*Rodgers*, 924 F.2d 219, 221 (11th Cir. 1991)(finding that the pathway that led from the driveway to the front door was not within the curtilage); *United States v. Blye*, 2011 WL 1983359, at *8 (M.D. Fla. 2011)(holding there was no reasonable expectation of privacy when the detectives walked up a driveway that was openly accessible to the public); *United States v. Alvin*, 2009 WL 722267, at *3 (S.D. Ga. 2009)(finding that a driveway was not located within the curtilage of a residence where it was used for ingress to and egress from the residence, was not within an enclosure of any kind, and was not obstructed in any way from the public's observation). Therefore, the warrantless seizure of the Impala was lawful, and after the vehicle was seized, law enforcement could conduct an inventory search of the vehicle. *South Dakota v. Opperman,* 428 U.S. 364 (1977).

## Automobile Exception

Assuming the seizure of the vehicle through forfeiture was invalid, law enforcement would still be able to search the vehicle because of the automobile exception to the Fourth Amendment. Law enforcement may conduct a warrantless search of a vehicle if there is probable cause to believe that contraband is in the vehicle. *Carroll v. United States*, 267 U.S. 132, 153 (1925). To conduct a warrantless search of the vehicle, the automobile has to be readily mobile and there has to be probable cause to believe there is contraband in the vehicle. *United States v. Watts*, 329 F.3d 1282 (11th Cir. 2003). To satisfy the mobility

requirement, the government must only show that the vehicle is operational. *Id.* at 1286. In this case, Blaich observed the Impala drive into the driveway, so law enforcement knew the vehicle was operational. Additionally, officers testified that they smelled and saw marijuana in the Impala. Based on these observations, the officers had probable cause to believe that contraband was inside the vehicle. Therefore, law enforcement could conduct a warrantless search of the vehicle, and any evidence seized as a result of the search was legally obtained and should not be suppressed.

## Conclusion

Defendant's Motion to Suppress (Doc. 212) is **DENIED**.

**ORDERED** on June 21, 2012.

>   /S/ Richard Smoak
>   **RICHARD SMOAK**
>   **UNITED STATES DISTRICT JUDGE**