IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

v.	CASE NO. 5:12-CR-05/RS-11

TROY ANTHONY COLEMAN,
Defendant,

## STATEMENT OF FACTS FOR GUILTY PLEA

In support of the Plea Agreement in this case, the United States provides the following factual basis, and Defendant admits all of the following facts as true and correct:

### A. Overview of the Knowles Drug-Trafficking Organization

In or about September 2011, the United States Drug Enforcement Agency ("DEA") began investigating a criminal drug-trafficking organization, known as the Knowles Drug-Trafficking Organization ("Knowles DTO"), which was involved with the acquisition, transportation, and distribution of multi-kilogram quantities of cocaine in the Bay County, Florida area. This investigation identified Freddie Lee Christopher Knowles, IV ("Knowles") as the instrumental member within the organization responsible for overseeing shipments of cocaine from the Southern/Eastern Districts of Texas and Southern District of Mississippi to the Northern District of Florida, Bay County area, where the cocaine was further distributed. Kelvin Rucker was the source of

FILED IN OPEN COURT THIS

8/9/12

1

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

supply ("SOS") for the Knowles DTO and was located in the Houston, Texas area. Kelvin Rucker would coordinate shipments of cocaine from Texas for delivery to the Knowles DTO. Couriers working at the instruction of Kelvin Rucker would deliver the cocaine to, and pick up money from, couriers working for the Knowles DTO. One such courier was David Isaac Rucker ("Rucker"), the brother of Kelvin Rucker. The hand-off between couriers generally occurred somewhere in Mississippi. The cocaine would then be transported to the Northern District of Florida, Bay County area, where the cocaine was broken down and distributed to other members of the Knowles DTO. Knowles' main courier was his girlfriend, Candis Marshae Walker ("Walker"). Distributors for the Knowles' DTO included, but were not limited to, John Jerome Fagin ("Fagin"), Christopher Mathis ("Mathis"), Willie James Morgan ("Morgan"), Willie Lamar Potter ("Potter"), Vincent M. Brown ("Brown"), Jimmie Lee Aikens, Jr. ("Aikens"), Jason Apollo Broxton ("Broxton"), Troy Anthony Coleman ("Coleman"), and Tommy Chin Van Duong ("Duong"), who are all co-defendants in this case.

**B.   Trips to/from Mississippi and Arrest of Co-Defendants**

Between October 22, 2011, and February 5, 2012, defendant Walker made eleven (11) trips to Jackson, Mississippi, during which she dropped off narcotic proceeds with Rucker and picked up kilogram quantities of cocaine and transported them back to Panama City for further distribution by the Knowles DTO. Indeed, on January 29, 2012, DEA intercepted a telephone call between Walker and Fagin where Walker stated that she had just returned from Jackson, Mississippi, with six kilograms of cocaine. Each time

Walker returned to Panama City with the cocaine, Knowles would break down the cocaine and repackage it for distribution to other members of the Knowles DTO.

On February 12, 2012, law enforcement surveilled Walker as she traveled from Panama City, Florida, to Jackson, Mississippi, in her Toyota Camry. Approximately six (6) hours after she left Panama City, Walker arrived at the Metro Center Mall in Jackson and parked outside the Sears store. Walker never exited her vehicle. Approximately eight (8) minutes later, Walker pulled out behind a black Pontiac Grand Am driven by Rucker and followed the vehicle in tandem until both vehicles arrived at a residence on Ewing Street. While at this residence, Rucker removed three brick-like packages containing approximately $106,550 from Walker's vehicle and placed them in the trunk of the Grand Am. As the vehicles left the residence, law enforcement officers stopped both vehicles and placed both Rucker and Walker under arrest.

Soon after law enforcement arrested Walker in Jackson, Mississippi, other agents arrested Knowles in Panama City and executed a search warrant on his and Walker's residence. During the search of the residence, law enforcement seized, among other things, more than five (5) kilograms of cocaine that was to be distributed by the Knowles DTO in and around Bay County, Florida.

C. **Arrest and Involvement of Troy Anthony Coleman**

Knowles began selling ounce quantities of cocaine to Coleman for $1,200 per ounce sometime in late 2010 or early 2011. By April or May 2011, Coleman was purchasing four and one half to nine ounces of cocaine every week or two. Coleman always paid for his cocaine up front. Finally, around August or September 2011 up until

the date of Knowles' arrest, Coleman began purchasing one kilogram of cocaine every three to four weeks from Knowles at a price of $36,000 per kilogram.

On January 19, 2012, investigators of the Bay County Sheriff's Office arrested Coleman pursuant to an active felony arrest warrant. During the arrest, investigators seized cocaine and a Taurus .38 caliber revolver which Coleman used for his protection and to protect his narcotics trafficking. Subsequent to his arrest and release from custody, Coleman purchased another one and one half kilograms of cocaine from Knowles in exchange for $45,000. This was the last time Coleman purchased cocaine from Knowles before Knowles' arrest on February 12, 2012. After Knowles was arrested, Coleman found a new source of supply for his narcotics, and when he was arrested in this case on May 2, 2012, Coleman was in possession of cocaine base.

Subsequently, on July 19, 2012, agents seized $20,000 in United States currency of Coleman's drug proceeds from Coleman's father. On July 20, 2012, agents seized a Ruger 9 mm pistol, a Taurus .45LC/454 Casull/ .410 GA revolver, a Taurus 9 mm pistol, some ammunition, and a Second Chance Ballistic vest with a shock plate. Finally, on July 23, 2012, Coleman's father delivered a cashier's check in the amount of $6,000 to DEA agents that represented $6,000 of Coleman's drug proceeds that his father had deposited into his personal bank account.

Coleman knowingly and intentionally conspired, confederated, and agreed with named conspirators and others to distribute and possess with the intent to distribute more than five (5) kilograms of cocaine.

Coleman knowingly and intentionally possessed with the intent to distribute cocaine and cocaine base.

Coleman knowingly possessed a Taurus .38 caliber revolver in furtherance of a drug-trafficking crime.

Coleman admits that on or about November 27, 2007, he was convicted in the State of Florida of Possession of Cocaine, Trafficking in Hydrocodone, Possession of a Controlled Substance, Fleeing and Attempting to Elude Police Officer, and Tampering with a Witness, all of which are felony offenses.

Coleman knowingly possessed a firearm after having previously been convicted of a felony offense.

## NOTICE OF ELEMENTS

### Count One: Conspiracy to Possess with Intent to Distribute Cocaine (21 U.S.C. §§ 841 and 846

Jury Instruction- Pattern No. 100

To prove a violation of 21 U.S.C. § 846, the government must prove all of the following elements beyond a reasonable doubt:

*First:*      That two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess a controlled substance;

*Second:*      The defendant knew the unlawful purpose of the plan and willfully joined in it; and

*Third:*      The object of the unlawful plan was to possess with the intent to distribute more than 5 kilograms of a mixture or substance containing a detectable amount of cocaine.

5

## Counts Seven and Ten: Possession with Intent to Distribute (21 U.S.C. § 841)

Jury Instruction- Pattern No. 98

To prove a violation of 21 U.S.C. § 841, the government must prove all of the following elements beyond a reasonable doubt:

*First:* The defendant knowingly possessed cocaine and crack cocaine;

*Second:* The defendant intended to distribute the cocaine and crack cocaine.

## Count Eight: Possession of a Firearm in Furtherance of Drug Trafficking (18 U.S.C. § 924(c))

Jury Instruction- Pattern No. 35.2

To prove a violation of 18 U.S.C. § 924(c), the government must prove all of the following elements beyond a reasonable doubt:

*First:* The defendant committed the drug-trafficking offense charged in Count One of the indictment;

*Second:* The defendant knowingly "possessed" a firearm; and

*Third:* The defendant "possessed the firearm" in furtherance of the drug-trafficking crime.

## Count Nine: Felon in Possession of a Firearm (18 U.S.C. § 922(g))

Jury Instruction- Pattern No. 34.6

To prove a violation of 18 U.S.C. § 922(g), the government must prove all of the following elements beyond a reasonable doubt:

*First:* The defendant knowingly possessed a firearm in or affecting interstate commerce; and

*Second:* Before possessing the firearm, the defendant had been convicted of a felony- a crime punishable by imprisonment for more than one year.

6

_Troy Coleman_
TROY ANTHONY COLEMAN
Defendant

8-6-12
Date

_Michel Stone_
MICHEL STONE
Attorney for Defendant

8/8/2012
Date

PAMELA C. MARSH
United States Attorney

_Kathryn Risinger_
KATHRYN RISINGER
Assistant United States Attorney
Texas Bar No: 24046723
1001 East Business Hwy 98
2nd Floor
Panama City, FL 32401-2758
(850)785-3495

8|9|12
Date

7