# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
## AMENDED
## MOTION BY A PERSON IN FEDERAL CUSTODY
## TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255

| UNITED STATES DISTRICT COURT | Division Northern District of Florida | |
|---|---|---|
| Name of Movant/Defendant Troy Anthony Coleman | Prisoner No. 21588-017 | Case No. 5:12cr5/RS/EMT 5:13cv374/RS/EMT |
| Place of Confinement (including address) USP Coleman 1, P.O. Box 1033, Coleman, FL 33521 | | |
| UNITED STATES OF AMERICA    v.    Troy Anthony Coleman (name under which convicted) | | |

**MOTION**

1. Name and location of court which entered the judgment of conviction under attack: __United States District Court, Northern District of Florida, Panama City__

2. Date of judgment of conviction: __8/19/2012__

3. Length of sentence: __210 Months__

4. Nature of offense involved (all counts): __Count 1: Conspiracy to distribute and possess with intent to distribute five (5) Kilograms or more of a mixture and Substance containing a detectable amount of cocaine. Count 2: Possess with intent to distribute a detectable amount of cocaine. Count 8 Possession of a firearm in furtherance of a drug trafficking crime Count 9: Unlawful transport of firearms, etc. Count 10-Controlled Substance - Sell, Distribute, or Dispense__

5. What was your plea? (Check one)
   (a) Not Guilty    ☐
   (b) Guilty    ☒
   (c) Nolo contendere    ☐

If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details: _____

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury    ☐
   (b) Judge only    ☐

7. Did you testify at the trial?    Yes ☐    No ☒

1

8. Did you appeal from the judgment of conviction to the Eleventh Circuit Court of Appeal?
    Yes ☐      No ☒

9. If you did appeal, answer the following:

    (a) Result: _____

    (b) Date of result and mandate: _____

10. Did you file a petition for rehearing?
    Yes ☐      No ☒

11. If you did file a petition for rehearing, provide the date and result of the petition: _____

_____

12. Did you file a petition for certiorari review?
    Yes ☐      No ☒

13. If you did file a petition for certiorari review, provide the date and result of the petition: _____

_____

14. Have you previously filed any post-conviction petitions, applications or motions, including previous
    § 2255 motions, with respect to this judgment in any federal court?
    Yes ☐      No ☒

15. If your answer to 14 was "yes," give the following information:

    (a)  (1) Name of court: _____

    (2) Nature of proceeding: _____

_____

    (3) Grounds raised: _____

_____

_____

_____

_____

    (4) Did you receive an evidentiary hearing on your petition, application or motion?
        Yes ☐      No ☐

    (5) Result: _____

    (6) Date of result: _____

2

(b) If you filed more than one such petition, please include the same information requested in 11(a) on a separate sheet of paper.

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on your petition, application or motion?
(1) First petition, etc.     Yes ☐     No ☐
(2) Second petition, etc.     Yes ☐     No ☐

(d) If you did *not* appeal from the adverse action of any petition, application or motion, explain briefly

why you did not: _____

_____

_____

_____

16. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.

**Caution: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.**

A. Ground one: Government Error and Ineffective Assistance of Counsel

Supporting FACTS (state *briefly* without citing cases or law): _____

Whether the Government committed error by constructively amending Coleman's indictment and by giving false information to the Grand Jury; and whether Coleman received ineffective assistance of counsel for his attorney's failure to subpoena witnesses to testify on Coleman's behalf in light of Coleman's Motion to Suppress

B. Ground two: Ineffective Assistance of Counsel

Supporting FACTS (state *briefly* without citing cases or law): _____

Whether Coleman received ineffective assistance of Counsel for his attorney's failure to proffer mitigating evidence at and before sentencing; and whether counsel was ineffective for failing to file Coleman's Notice of appeal regarding his excessive sentence

3

C. Ground three: Court Error

Supporting FACTS (state *briefly* without citing cases or law): Whether the district Court erred in accepting an inflated drug weight to determine Coleman's sentence; and whether the government, throughout the legal proceedings, provided false information to the grand jury in regard to drug weight for which Coleman was directly responsible for.

D. Ground four: Court Error / Ineffective Assistance of Counsel

Supporting FACTS (state *briefly* without citing cases or law): Whether the district Court erred in apply a Section 851 sentencing enhancement; and Whether Coleman received ineffective assistance of counsel for his attorney's failure to object to the use of a questionable prior conviction to enhance Coleman's statutory minimum sentence under U.S.C. Section 841.

17. As to the grounds listed in 16A, B, C, and D, explain whether any grounds were previously presented, and for those that were not previously presented, state *briefly* your reasons for not presenting them: _____

No - My attorney failed to file a direct appeal and failed to ask me if I wished to do so, even though I sent a letter to him asking him to file a Notice of appeal.

18. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐  No ☒

19. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐  No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

4

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   Yes ☐      No ☐

20. What relief do you request from this Court? Vacation of Present Sentence for a Substantially lower sentence based upon facts herein and if necessary an evidentiary hearing with Competent legal Counsel appointed at the Court's expense or any other relief to which the movant may be entitled.

Wherefore, movant prays that the Court grant the relief to which he or she may be entitled in this proceeding.

_____
Signature of Attorney (if any)


I declare under penalty or perjury that the foregoing is true and correct. Executed on:

12-11-13
(Date)

_____
Signature of Movant/Defendant


IF MAILED BY PRISONER:

I declare or state under penalty of perjury that this petition was (check one):
☐ delivered to prison officials for mailing, or   ☐ deposited in the prison's internal mail system on:

12-11-13 _____ (date).

_____
Signature of Movant/Defendant

Revised 07/02

5

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# (PANAMA CITY DIVISION)

| | |
|---|---|
| **TROY ANTHONY COLEMAN,** | ) |
| **Movant,** | ) |
| | ) **Criminal No. 5:12cr5/RS/EMT** |
| **vs.** | ) **Civil Action No. 5:13cv374/RS/EMT** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| **Respondent.** | ) |

## MOVANT'S MEMORANDUM OF LAW IN SUPPORT OF AN AMENDED MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY;

COMES movant, TROY ANTHONY COLEMAN, ("Coleman"), *pro se*, and

in support of his Motion would show as follows:

## I. JURISDICTION

Jurisdiction is vested in this Court pursuant to 28 U.S.C. §2255.

Coleman timely files his Motion under 28 U.S.C. §2255, to vacate, set aside, or

correct a sentence by a person in federal custody ("§2255 Motion")

contemporaneously with this memorandum of law. Jurisdiction is vested in this

District Court that presided over and imposed sentence pursuant to Rule 4(a) of

the rules governing §2255 proceedings. See *Liteky v. United States*, 510 U. S.

540,562 (1994).

1

# II. STATEMENT OF THE GROUNDS FOR RELIEF

A. Whether the government committed error by constructively amending Coleman's indictment and by giving false information to the Grand Jury; and whether Coleman received ineffective assistance of counsel for his attorney's failure to subpoena witnesses to testify on Coleman's behalf in light of the motion to suppress;

B. Whether Coleman received ineffective assistance of counsel for his attorney's failure to proffer mitigating evidence at and before sentencing; whether counsel was ineffective for advising Coleman to plead guilty; and whether counsel was ineffective by not filing Coleman's Notice of Appeal;

C. Whether the District Court erred in accepting an inflated drug weight to determine Coleman's sentence; and whether the government throughout the legal proceedings provided false information to the Grand Jury in regard to drug weight for which Coleman was actually responsible;

D. Whether the District Court erred in applying an § 851 sentencing enhancement; and whether Coleman received ineffective assistance of counsel for his attorney's failure to object to the use of a questionable prior conviction to enhance Coleman's statutory minimum sentence under 21 U.S.C. § 841;

## III. STATEMENT OF THE FACTS

### A.    Relevant Course of Proceedings and Disposition Below

On April 19, 2012, a Sealed Superseding Indictment was filed in the United States District Court, Northern District of Florida (Panama City Division), (Doc. 50)[1]. Coleman was charged in the Superseding Indictment as follows:

1. Count 1: Conspiracy to distribute and possess with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, 21 U.S.C. §§ 841(a)(1),(b)(1)(A)(ii) and 846;

2. Count 7: Possess with intent to distribute a detectable amount of cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C);

3. Count 8: Possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i);

4. Count 9: Felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) and 924(a)(2);

On that same date the judge signed an Order for Issuance of Arrest Warrant as to Troy Anthony Coleman. (Doc. 65), and on May 02, 2012, the arrest warrant returned executed. (Doc. 129).

----

[1]

"Doc" refers to the Docket Report in the United States District Court for the Northern District of Florida, Panama City Division in Criminal Number 5:12-cr-00005-RS-CJK-11, which is immediately followed by the Docket Entry Number. "PSR" refers to the Presentence Report which is immediately followed by the paragraph number.

On May 3, 2012, Coleman was brought before the Court and pled not guilty to the above noted counts. (Doc. 131).

On May 7, 2012, a hearing was held as to Coleman, in which the Court ordered pretrial detention. (Doc. 148).

On May 15, 2012, a Second Superseding Indictment was filed in the United States District Court, Northern District of Florida (Panama City Division), (Doc. 160). Coleman was charged in the Second Superseding Indictment as follows:

1. Count 1: Conspiracy to distribute and possess with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, 21 U.S.C. §§ 841(a)(1),(b)(1)(A)(ii) and 846;

2. Count 7: Possess with intent to distribute a detectable amount of cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C);

3. Count 8: Possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i);

4. Count 9: Felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) and 924(a)(2);

5. Count 10: Possess with intent to distribute mixture and substance containing cocaine base, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C);

On May 17, 2012, the government filed an Enhancement Information notifying the Court and the defendant that he is subject to increased penalty provisions as to Counts 1, 7, and 10, based on his prior felony drug convictions. (Doc. 187).

On May 24, 2012, Coleman was brought before the Court and pled not guilty to the above noted counts. (Doc. 210).

On June 1, 2012, Coleman filed a Motion to Suppress, (Doc. 212), and on June 15, 2012, the government filed a Response in opposition to Coleman's Motion to Suppress. (Doc. 256). On June 20, 2012, Coleman's Motion to Suppress was denied. (Doc. 258).

On July 18, 2012, a Notice of Hearing was filed as to Coleman and a Change of Plea Hearing was set. (Doc. 268). On August 9, 2012, Coleman was brought before the Court and changed his plea from not guilty to guilty, (Doc. 308), and on this same date the Court accepted Coleman's plea.

On August 14, 2012, a Notice of Hearing was filed as to Coleman and a Sentencing Hearing was set. (Doc. 309).

On October 15, 2012, a Draft Presentence Investigation Report was filed as to Coleman, (Doc. 403), and on October 29, 2012, a Response to the Presentence Investigation Report was filed. (Doc. 406). On November 1, 2012, a Final Presentence Investigation Report as to Coleman was filed. (Doc. 408).

On November 07, 2012, Coleman was sentenced to 168 months imprisonment as to each of counts 1, 7 & 10, and 120 months as to count 9, to all be served concurrently; and 42 months imprisonment as to count 8, to run consecutively to counts 1, 7, 9 & 10; 10 years S/R as to count 1, 6 years as to each

5

of counts 7 & 10, 5 years as to count 8, & 3 years as to count 9, all counts to run concurrently; $500 total SMA; $1,000 fine. (Doc. 416). On November 9, 2012, Judgment as to Coleman was entered. (Doc. 421).

B.    Statement of the Relevant Facts

On January 19, 2012, investigators of the Bay County Sheriff's Office ("BCSO") arrested Coleman pursuant to an active felony arrest warrant. The warrant was issued on the basis of a complaint/affidavit sworn to by Jason Daffin, BCSO. That affidavit recounts events which occurred on December 20, 2011, comprising an alleged criminal mischief from allegations supplied by Charles Riley. This same affidavit indicated that physical evidence was collected in the case, and that witness statements were taken in the case, however neither evidence nor witness statements appeared in the Government's discovery. During Coleman's arrest, investigators seized cocaine and a Taurus .38 caliber revolver, for which Coleman received additional charges in state court. See, *State v. Troy Anthony Coleman*, Case No. 12-00232 CA. On January 24, 2012, Coleman filed a written plea of not guilty to all charges and demanded discovery. Discovery was never produced and neither an indictment nor an information was ever filed. Coleman was released on bond.

In or about September 2011, the United States Drug Enforcement Agency ("DEA") began investigating an alleged criminal drug-trafficking organization,

known as the Knowles Drug-Trafficking Organization ("Knowles DTO"), which was said to have been involved with the acquisition, transportation, and distribution of multi-kilogram quantities of cocaine in the Bay County, Florida area. This investigation identified Freddie Lee Christopher Knowles, IV ("Knowles"), as the instrumental member within the alleged organization responsible for overseeing shipments of cocaine from the Southern/Eastern Districts of Texas and Southern District of Mississippi, to the Northern District of Florida, Bay County area, where it was said to have been further distributed.

On February 14, 2012, a Federal Criminal Complaint and warrant were issued in the Northern District of Florida, authorizing the arrest of Knowles, Knowles girlfriend and alleged courier Candis Marshae Walker, David Isaac Rucker, and John Jerome Fagin. Kelvin Rucker, the half-brother of David Rucker, lived in the Houston, Texas area, and was said to have coordinated shipments of cocaine from Texas to Florida to the Knowles DTO. Kelvin Rucker was indicted in the Eastern District of Texas on April 18, 2012. Coleman was not charged in the complaint or the indictment.

On February 29, 2012, Knowles' alleged in his post-arrest statement that sometime in late 2010 or early 2011, he began selling ounce quantities of cocaine to Coleman. By April or May 2011, Coleman was said to have been purchasing four and one half to nine ounces of cocaine every week or two, and by August or

September 2011, Coleman allegedly began purchasing one kilogram of cocaine every three to four weeks from Knowles. Prior to Knowles' statement there was no mention of Coleman's name in the records to indicate that he was being investigated in connection with the alleged Knowles DTO.

On April 19, 2012, a Superseding Indictment was returned in the United States District Court, Northern District of Florida (Panama City Division), naming Coleman in Counts 1, 7, 8, and 9. A warrant for Coleman's arrest was issued. On May 2, 2012, personnel of the Panama City Police Department, along with DEA agents, attempted to execute the warrant but were unable to apprehend Coleman. Subsequent to the officers failed attempt, federal agents searched a vehicle believed to be that of Coleman and found an unspecified amount of cocaine base. On this same date, Coleman turned himself in to DEA agents at the Bay County, Florida, jail. On May 15, 2012, a Second Superseding Indictment was returned in the United States District Court, Northern District of Florida (Panama City Division), naming Coleman in Count 10.

## IV. COGNIZABLE ISSUES UNDER § 2255

The function of a §2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See, *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or her

detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) "that the sentence is otherwise 'subject to collateral attack." 28 U.S.C § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974). Under Section 2255 of Title 28, United States Code, a federal prisoner may move the sentencing court to vacate, set aside, or correct the sentence on the ground that such sentence was illegally imposed. 28 U.S.C. § 2255(a). The statute further provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). Rule 4(b) of the Rules Governing § 2255 Proceedings further provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 281 U.S.C. foll. § 2255. The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding. The

petitioner's motion sets forth his or her legal and factual claims, accompanied by relevant exhibits: *e.g.*, an affidavit from the petitioner or others asserting relevant facts within their personal knowledge and/or identifying other sources of relevant evidence. Compare Rules Governing § 2255 Proceedings, Rules 2, 4(b), with Fed.R.Civ.P. 56(a)-(c); see also, *Blackledge v. Allison*, 431 U.S. 63, 80-83, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). The district court reviews those materials and relevant portions of the record in the underlying criminal proceeding. Compare rules governing § 2255 proceedings, Rules 4(b), 8(a) with Fed.R.Civ.P. 56(c). The court then determines whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a prima facie case for relief. If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (requiring plaintiff present evidence from which a jury might return a favorable verdict in order to have survived summary judgment requirement that he provide "a genuine issue of fact" for trial). The remedy provided in §2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See, *Andrews v. United States*, 373 U. S. 334, 339 (1963). The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions. See, *Strickland v. Washington,* 466 U. S. 668 (1984). As such, ineffective assistance of

10

counsel claims are cognizable in a §2255 setting because they are of constitutional

dimension. See, *Kimmelman v. Morrison*, 477 U.S. 365, 371-79 and n.3 (1986);

*Strickland*, supra. The Sixth Amendment also entitles a defendant to the assistance

of counsel at every critical stage of a criminal prosecution. *Kirby v. Illinois,* 406

U.S. 682, 690 (1972). Critical stages are those steps of a criminal proceeding that

hold significant consequences for the accused. See, *Bell v. Cone,* 535 U.S. 685,

695-96 (2002). Thus, a defendant is entitled to counsel at any proceeding where an

attorney's assistance may avoid the substantial prejudice that could otherwise result

from the proceeding. See, *Coleman v. Alabama,* 399 U.S. 1, 9 (1970). To prevail on

an ineffective assistance of counsel claim, Coleman must show (1) "that his

counsel's representation fell below an objective standard of reasonableness" and (2)

"that there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." *Strickland v. Washington*,

466 U.S. 668, 688, 694 (1984). The first *Strickland* requirement is commonly called

the "performance" prong and the second is called the "prejudiced" prong. See

*Strickland,* 466 U. S. at 687. Further, Coleman must show that counsel's errors

were prejudicial and deprived him of a "fair trial", or in other words, a trial whose

result is reliable. *Id* The familiar two-part test of *Strickland* referenced above has

been applied by the Supreme Court and the Second Circuit in a wide variety of

contextual challenges to the effectiveness of counsel's performance in all phases of

the proceedings. *Id.*

Defendants can raise ineffective assistance claims concerning performance before trial and during plea negotiation [*Lafler v. Cooper*, 132 S. Ct. 136 (2012); *Kimmelman v. Morrison*, 477 U.S. 365, 385(1986); performance during trial [*Strickland*, 466 U.S. at 686, 687; assistance during sentencing [*Strickland,* supra; *Glover v. United States,*531 U.S. 198 (2001); and performance on appeal [*Evitts v. Lucey,* 469 U. S. 387, 396 (1985)]. Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. See also, *Andrews v. United States*, 373 U.S. 334, 339 (1963).

## V. **GROUNDS FOR REVIEW**

As a preliminary matter, it is respectfully requested that this Court be mindful that pro se litigants are entitled to liberal construction of their pleadings. *Laurent v. Select Portfolio Serv., Inc.*, 193 F. App'x 831, 833 (11th Cir. 2006); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); and *Haines v. Kerner*, 404 U.S. 519 (1972).

1. **The government committed error by constructively amending Coleman's indictment and by giving false information to the Grand Jury; and Coleman received ineffective assistance of counsel for his attorney's failure to subpoena witnesses to testify on Coleman's behalf in light of the motion to suppress;**

The Fifth Amendment of the U.S. Constitution provides, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury ..." This guarantee is important to a person under federal criminal investigation because the purpose of the Grand Jury is "to provide a fair method for instituting criminal proceedings," *Costello v. U.S.*, 350 U.S. 359, 362 (1956), to serve "as a protector of citizens against arbitrary and oppressive governmental action," *U.S. v. Calandra*, 414 U.S. 338, 343 (1974), and to assure "protecting of citizens against unfounded criminal prosecutions." *Branzburg v. Hayes*, 408 U.S. 665, 668 (1972). Therefore, these purposes make it necessary that the Grand Jury be an investigating body, "acting independently of either prosecuting attorney or judge." See, *Stirone v. U.S.*, 361 U.S. 212, 218 (1960).

In essence, a prosecutor who presents a case to a Grand Jury has the obligation of preserving the fairness, impartiality and lack of bias of this important governmental investigative body. He cannot inflame or otherwise improperly influence grand jurors against any person. See, *U.S. v. DiGrazia*, 213 F. Supp. at 235.

In this case, the Grand Jury relied on incorrect, misleading, and unreliable information from the government. Despite the laboratory report's finding that 2.3 net grams of crack cocaine was the amount seized in the questionable May 02, 2012 search, the prosecution presented false evidence to the Grand Jury in the amount of 40 grams of crack cocaine and called DEA agent, Brian Lammers, to testify to the erroneous amount. "A prosecutor should not knowingly offer false evidence, whether by documents, tangible evidence, or the testimony of witnesses, or fail to seek withdrawal thereof upon discovery of its falsity." See, Standard 3-5.6(a) of the American Bar Association's Standards for Criminal Justice.

Moreover, there is a further discrepancy in that, the report of investigation drug exhibit 28 says suspected crack cocaine in the amount of 32.7 gross grams and drug exhibit 29 says suspected crack cocaine in the amount of 46.7 gross grams, however when the Grand Jury specifically asked agent Lammers if he was sure the amount of suspected crack cocaine was 40 grams, he acknowledged that the amount of suspected crack cocaine was in fact 40 grams.

Long ago decided and brought to focus by the US Supreme Court in *Apprendi*, then re-affirmed in numerous courts, the drug quantity must be decided by the Grand Jury and charged in the indictment as it is an element of the offense. In the instant case, the Grand Jury indicted Coleman on a fabricated drug weight not charged in the indictment.

14

Because of the punishment of the constructive amendment of the instant indictment by way of prosecutorial misconduct, there is but one cure for a violation of such constitutional magnitude, and that is dismissal of the indictment with prejudice. A constructive amendment "occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v. Keller*, 916 F.2d 628, 634 (11th Cir. 1990).

Furthermore, despite that Coleman's attorney filed a motion to suppress the evidence seized from the questionable January 19, 2012, and May 02, 2012 searches; counsel failed to investigate or subpoena witnesses on Coleman's behalf, including a man by the name of Grady, last name unknown, and Charles Baker, both of which whom could have ultimately discredited the state's evidence. In fact Grady, a potential alibi witness for the defense, made contact with Coleman's attorney on several occasions and stated to counsel that he was the one responsible for the alleged criminal mischief that took place on the night of December 20, 2011. Counsel, not only failed to interview or subpoena Grady and Charles Baker but, failed to interview or subpoena the complainant, Charles Riley, as well. Counsel offered no explanation of strategy despite Coleman being adamant about the impact these witnesses could have on the outcome of the motion. "[C]ounsel have a duty to interview potential witnesses and 'make an independent

15

examination of the facts, circumstances, pleadings, and laws involved.'" See, *Von Moltke v. Gillies*, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948).

Coleman avers that counsel was unreasonably ineffective because he did not investigate or subpoena any witnesses notwithstanding the fact that at least one of the witnesses was willing to testify. Counsel's failure to interview and subpoena witnesses proved to be detrimental to the outcome of Coleman's Motion to Suppress, and ultimately to the outcome of Coleman's case. If counsel had investigated or subpoenaed the witnesses and the District Court had ruled in favor of Coleman's Motion then the government would have had a more difficult time proving their case against Coleman.

Accordingly, Coleman's sentence should be vacated for resentencing.

2.    **Coleman received ineffective assistance of counsel for his attorney's failure to proffer mitigating evidence at and before sentencing; counsel was ineffective for advising Coleman to plead guilty; and counsel was ineffective by not filing Coleman's Notice of Appeal;**

One of the Constitution's many mechanisms for protecting individual liberty is the Sixth Amendment's guarantee of "the assistance of counsel" for those individuals accused of crimes. See, U.S. CONST. Amend. VI. This guarantee requires more than just any counsel; defendants also have a right to counsel that provides effective assistance. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled

16

to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair. For that reason, the Court has recognized that "the right to counsel is the right to effective assistance of counsel." See, *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, n. 14, 25 L.Ed.2d 763 (1970).

Nearly thirty years ago, in *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court developed a standard for evaluating claims of ineffective assistance of counsel. These claims are reviewed under the familiar two-prong analysis set forth in *Strickland*. First, a petitioner must demonstrate that his attorney's performance was deficient. See, *Strickland*, 466 U.S. at 688, 104 S. Ct. 2052. If he succeeds in satisfying the first hurdle, then a petitioner must also demonstrate that the deficient performance prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. 2052. Though *Strickland* was a capital case, its test for ineffective assistance of counsel became the test for noncapital cases as well.

In this case, Coleman's attorney failed to investigate and present relevant mitigating evidence at and before sentencing. Instead, counsel relied on Coleman's age, stature, and the sworn testimony of both Coleman's father and Coleman's girlfriend. "[T]he key aspect of the penalty trial is that the sentence be

17

individualized, focusing on the particularized characteristics of the individual."

See, *Thomas v. Kemp*, 796 F.2d at 1325 (citing Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)).

"[T]he Eleventh Circuit has enunciated the rule that effective representation, consistent with the sixth amendment, also involves 'the independent duty to investigate and prepare.'" See, *House v. Balkcom*, 725 F.2d 608, 618 (11th Cir. 1984) (citations omitted); See also, *Bolender*, 16 F.3d at 1557 ("The failure to conduct a reasonable investigation into possible mitigating circumstances may render counsel's assistance ineffective.").

Furthermore, counsel was ineffective for his failure to object to the lack of evidence sufficient to show an active employment of the firearm in which Coleman was allegedly in possession of, despite that Coleman was never found to be in actual possession of any firearm. In *Bailey v. United States*, 516 U.S. 137, 133 L.Ed.2d 472, 116 S.Ct. 501 (1995), the US Supreme Court held that (1) A conviction for use of a firearm for purposes of § 924(c)(1) requires evidence sufficient to show an active employment of the firearm by the accused, a use that makes the firearm an operative factor in relation to the predicate offense; (2) the § 924(c)(1) convictions in question must be supported by sufficient evidence that the firearms were actively employed in anyway; (3) the accused were charged under both the "use" and "carry" prongs of § 924(c)(1) and because the Court of Appeals

18

did not consider liability under the "carry" prong of the statute, a remand would be ordered for consideration of that basis for upholding the convictions. None of the standards set forth in *Bailey* could have been met or proven by the government had Coleman's attorney opted to go to trial, yet counsel prematurely advised Coleman to plead out, which in addition to Coleman's three-count concurrent sentence, also cost him 42 additional months in regard to Count 8. Furthermore, counsel was ineffective for advising Coleman to plead guilty when considering all the other alternative defenses that could have been used had counsel investigated the matters that Coleman informed him of including subpoenaing pertinent witnesses, challenging drug weights presented to the Grand Jury, failing to challenge the government's enhancement contentions, and failing to contest the government's actions in having other felons testify against Coleman; all of which are elements of ineffective assistance of counsel.

In addition, counsel failed to file a Notice of Appeal. In, *Strickland v. Washington*, the Supreme Court held that counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew

or should have known. *Id.*, at 690 (focusing on the totality of the circumstances).

Only by considering all relevant factors in a given case can a court properly

determine whether a rational defendant would have desired an appeal or that the

particular defendant sufficiently demonstrated to counsel an interest in an appeal.

In this case, not only were there non-frivolous grounds to appeal but

Coleman expressed to his attorney an interest in an appeal both verbally and in

writing, however counsel decided against it rather than investigate into every

plausible defense and familiarize himself with case law regarding such cases.

Counsels' actions were not that of strategic choice but from the direct result of

little to no knowledge about the federal rules of criminal procedure and the case

law governing such proceedings. Coleman even wrote his attorney a letter

requesting that he appeal his case to which he never received a reply. Said letter is

herein attached as Exhibit A. Accordingly, Coleman's sentence should be vacated

for resentencing.

## 3. The District Court erred in accepting an inflated drug weight to determine Coleman's sentence; and the government throughout the legal proceedings provided false information to the Grand Jury in regard to drug weight for which Coleman was actually responsible;

The DEA investigation into the Knowles DTO lacked sufficient evidence

against Coleman to neither name him in the complaint nor charge him in the first

indictment. Subsequently, there are no records to indicate that Coleman was even

suspected in the Knowles DTO investigation. It was not until Knowles post-arrest statement in which he alleged that Coleman purchased large quantities of cocaine from him beginning sometime in late 2010, or early 2011, up until Knowles arrest on February 29, 2012. None of the 9 other co-defendants in this case make any mention of Coleman in their post-arrest statements, nor do any of their statements corroborate Knowles statement, including the statement of Knowles live-in girlfriend, Candis Marshae Walker. The government relied on the evidence seized in the course of two questionable searches to indict Coleman. The records indicate that the January 19, 2012 search, proffered evidence of 'cocaine' and a Taurus .38 caliber revolver, which ultimately led to Counts 7, 8, and 9, of the superseding indictment; and the May 02, 2012 search, proffered evidence of 'cocaine base' which according to the laboratory report, indicated a net weight of 2.3 grams, and ultimately led to Count 10 in the second superseding indictment. The government, however, introduced evidence to the Grand Jury that Coleman was responsible for 40 grams of crack cocaine. Subsequently, the Court accepted this amount and defense counsel did not object. A specific amount to Count 7 was never introduced. Coleman avers that not only was the 2.3 net grams of crack cocaine inflated to 40 grams of crack cocaine by the government, rendering the indictment defective, but that Count 7 containing, a 'detectable amount' of cocaine lacks sufficiency as to a reasonable explanation of the charges against him, thereby

violating Coleman's Sixth Amendment right.

Moreover, the government shifted the burden of proof to Coleman and failed to define 'detectable amount of cocaine' as charged in Count 7 of the superseding indictment, thus depriving Coleman of an adequately guided Grand Jury. 'As a general rule, each element of a charged crime must be set forth in an indictment.' See, *Hamling v. United States*, 418 U.S. 87, 117 (1974). 'The government must prove every fact of a crime before a defendant may be convicted of that crime.' See, *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068 1073, 25 L. Ed. 2d 368 (1970) ("Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

In, *United States v. Alvarez*, 735 F.2d 461 (11th Cir. 1984), the sentences of four co-conspirators were reversed because neither the indictment nor the jury verdict made clear exactly what type or amount of drug was involved in the conspiracy for which the four were convicted. That is clearly the case here in regards to Count 7 of the superseding indictment.

Furthermore, the records indicate that Coleman was held accountable for 10.201 kilograms of cocaine; a finding of fact made by a determination from the district court rather than that of the Grand Jury. *Apprendi v. New Jersey*, cited

infra, "concluded that any 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' " are elements of the crime, *Id.*, at 490, 120 S.Ct. 2348, and thus the Sixth Amendment provides defendants with the right to have a jury finds those facts beyond a reasonable doubt, *Id.*, at 484, 120 S.Ct. 2348.

In addition, although counsel did file timely objections to Coleman's PSR, the Addendum to the PSR indicates that there is still an objection that is unresolved and requires court finding. This objection is in regards to a discrepancy between the 10.201 kilograms of cocaine the Court determined Coleman was responsible for and the amount that counsel stipulates to in his objection to the PSR ¶ 96, which would ultimately discredit Count 1 of the superseding indictment, charging Coleman with 'Conspiracy to distribute and possess with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine.'

Coleman avers that failure to resolve such an issue constitutes error by way of the district court. Coleman further avers that the Grand Jury indictment based upon the grossly inflated editing of evidence as to Count 10, the lack of sufficient elements as to Count 7, and the discrepancy in regards to the Court's determination of drug weight Coleman was alleged to have been responsible for as to Count 1, constitutes a complete miscarriage of justice in and of itself.

Subsequently, it appears that there are other inconsistencies in Coleman's PSR on the prior convictions in regard to their specificity. In the Supreme Court's ruling on June 20, 2013, in the matter of *Descamps v. United States*, 133 S.Ct. 2276 (2013), the Supreme Court made it abundantly clear that Probation and the Court must insure that prior convictions, when used to determine sentencing, must be specific in regard to the crime that was committed, as well as, the prior punishment of a defendant that was used to determine the defendant's criminal history. In other words, convictions for less than a year's time mandated as punishment should not be considered in enhancing one's sentence, neither should the severity of the criminal act be lumped into one category. In a recent Supreme Court case, *Olten v. United States*, No. 12-4070-CV-C-NKL-P (2012), which was granted certiorari, the Supreme Court remanded the case back to the Eighth Circuit Court of Appeals and instructed the Eighth Circuit to consider *Descamps* in their re-examination of *Olten's* 2255 motion. It would seem appropriate that the same consideration be granted in this instant matter, and that Probation should review its past work done on Coleman's Presentence Report.

On pages 23 through 26 of the Presentence Investigation Report, all but one of Coleman's prior convictions were sentenced under the State of Florida Youthful Offender Sentencing Program. Some of the offenses were less than one year. This

is the specificity that *Descamps* urges Court's to adhere to and that specificity is

lacking in the Presentence Investigation Report in this matter.

## 4. The District Court erred in applying an § 851 sentencing enhancement; and Coleman received ineffective assistance of counsel for his attorney's failure to object to the use of a questionable prior conviction to enhance Coleman's statutory minimum sentence under 21 U.S.C. § 841;

Since Coleman's case, the United States Supreme Court decided *Alleyne v.*

*United States*, 133 S.Ct. 2151 (2013). In light of *Alleyne*, Coleman's sentence

should be vacated for resentencing.

The Court in *Alleyne* overruled *Harris v. United States*, 536 U.S. 545 (2002),

and concluded that:

> "[a]ny fact that by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."

133 S. Ct. at 2155 (citation omitted).

In *Alleyne*, the Court addressed Allen Ryan Alleyne's ("Alleyne")

conviction. The jury verdict in that case indicated that Alleyne had "used or carried

a firearm during and in relation to a crime of violence, but did not indicate a

finding that the firearm was brandished." *Id.* at 2156. (alterations and internal

quotations omitted). Alleyne's presentence report recommended a seven- year

minimum sentence on the § 924(c) count for brandishing a firearm, in accordance

with § 924(c)(1)(A)(ii). (*Id.*). Also, the district court sentenced Alleyne to seven years' imprisonment, despite his objection that "raising his mandatory minimum sentence based on a sentencing judge's finding that he brandished a firearm" violated his Sixth Amendment right to a jury trial. *Id.* The Fourth Circuit affirmed, noting that *Alleyne's* argument was foreclosed by *Harris*. *Id.* The Supreme Court ultimately overruled *Harris*, noting it could not be reconciled with *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Id.* at 2158. In doing so, the Court recognized that *Apprendi* both, "concluded that any 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' are elements of the crime" and held that the "Sixth Amendment provides defendants with the right to have a jury find those facts beyond a reasonable doubt." *Id.* at 2160. Because a fact triggering a mandatory minimum impacts the prescribed sentencing range, it follows, then, that a "fact increasing either end of the [sentencing] range produces a new penalty and constitutes an ingredient of the offense." *Id.* Facts that increase the legally prescribed floor "aggravate" the punishment and, as the Court opined, these facts must therefore be submitted to the jury and found beyond a reasonable doubt, in accordance with the Sixth Amendment. *Id.* at 2161.

In this case, Coleman's sentence was enhanced by prior felony drug convictions recommended by the probation officer in Coleman's PSR and argued for by the government at his sentencing. These enhancements were not alleged in the Criminal Indictment and were not found beyond a reasonable doubt by the jury.

Coleman was sentenced to a total of 210 months imprisonment and 10-years of Supervised Release.

In *DePierre*, (No. 09-1533)(S. Ct. June 9, 2012),the Supreme Court stated that a District Court can only consider a penalty enhancement if it had been charged in the indictment and/or proven beyond a reasonable doubt to the jury. If that finding is not part of the record of conviction, *DePierre* holds that the defendant has not been convicted of that fact.

At the time of Coleman's conviction, it was well settled case law (prior to *Apprendi*), that an enhancement could be used to increase a mandatory minimum and/or maximum sentence. Nevertheless, in conformity with standard practice adopted by District Courts following the promulgation of the U.S. Sentencing Guidelines, Coleman's PSR recommended that the sentencing judge enter a finding regarding the enhancement for prior felony drug convictions.

"Under our vaunted legal system, no man, however bad his behavior may be can be convicted of a crime for which he was not charged, proven and found guilty of or admitted to, in accordance with due process." See, *Parr v. United States*, 363 U.S. 370, 394 (1960). In sum, it is possible to view the consequences of this error in one of two ways: (1) Coleman was improperly sentenced to a greater penalty than the one authorized by Congress for the crime of which he was convicted; or (2) Coleman was improperly convicted because the crime of conviction was not

27

fully alleged in the Indictment or found beyond a reasonable doubt by the jury.

Because Coleman's enhancements were based on the PSR's recommendation, those enhancements violated the Sixth Amendment under *Alleyne* and its predecessors. With regard to prejudice, the Court error affected Coleman's substantial rights and increased his sentence to a significantly harsher sentence which actually prejudiced him under the Sixth Amendment. See, *Glover v. United States*, 531 U. S. 198 (2001) ("any amount of actual jail time has Sixth Amendment significance.").

Moreover, Coleman avers that counsel was ineffective for not objecting to the use of an alleged prior conviction to enhance Coleman's sentence. There is little doubt that counsel was unfamiliar with the facts and law relevant to Coleman's case; counsel's failure to object to enhancing Coleman's mandatory minimum sentence based on a sentencing judge's findings that he had prior felony drug convictions, and thereby violating his client's Sixth Amendment right to a jury trial, proved this to be true. See, *Apprendi*, cited supra. See also, *Alleyne*, cited supra. Furthermore, counsel failed to object to the admission of prior nolo contendere convictions. In *Harrison v. Jones*, the Court held that counsel's failure to object to the admission of prior convictions at sentencing, constituted ineffective assistance of counsel. See, 880 F.2d 1279 (11th Cir. 1989).

Accordingly, Coleman's sentence should be vacated for resentencing.

## CONCLUSION

WHEREFORE PREMISES CONSIDERED AND FOR GOOD CAUSE

SHOWN, Coleman moves before this Court for an evidentiary hearing considering

the grounds mentioned supra and the reduction of his current sentence as well as

any other relief the Court may deem meritorious. If an evidentiary hearing is

granted, Coleman further moves before the Court that competent sentencing

counsel be appointed to assist him with his 2255 Motion.

Respectfully submitted,

DATE: 12-11-13     BY: _Troy Coleman_____

Troy Anthony Coleman
Movant pro se
Reg. No. 21588-017
USP Coleman I
U.S. Penitentiary
P.O. Box 1033
Coleman, FL 33521

## DECLARATION OF TROY ANTHONY COLEMAN

I, Troy Anthony Coleman, declarant herein, declare and attest to the facts in
the above and foregoing Memorandum of Law in Support of Motion under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal
Custody to be true and correct to the best of my knowledge under the penalty of
perjury pursuant to 28 U.S.C. § 1746.

Dated: _Dec. 11th_, 20_13_.  _Troy Coleman_
**TROY ANTHONY COLEMAN**


## CERTIFICATE OF SERVICE

I hereby certify that on _December 11th_, 2013, I forwarded one copy of
my Motion to vacate, set aside, and/or correct sentence, to the Office of the United
States Attorney for the Northern District of Florida, Panama City Division via
United States First Class Mail with correct postage pre-purchased and affixed
thereto.

_12-11-13_  _Troy Coleman_
DATE:  TROY ANTHONY COLEMAN

Mike —                                    11-7-12

Hello Mike, not feeling so good here right now.
I believe there were mistakes made. Please remember
to file the notice of appeal. I appreciate it, I'll
be in contact.

Thanks,
Troy

Exibit A

Troy Coleman        H-Unit
#21588-017
Federal Correctional Complex USP 1
PO BOX 1033
Coleman, FL
        33521


Clerk of
United Sta
For the Nor
United Stat
Panama Dir
30 West
Panama C