**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                          **Case No. 5:12-cr-5RS-11/EMT**
                                                         **5:13-cv-374/RS/EMT**

**TROY ANTHONY COLEMAN**
_____/

**UNITED STATES' RESPONSE IN OPPOSITION TO PETITIONER'S
AMENDED MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
PURSUANT TO 28 U.S.C. § 2255**

The United States of America, by and through the undersigned Assistant United States Attorney, pursuant to 28 U.S.C. § 2255, the rules governing section 2255 proceedings, and this Court's order, hereby responds in opposition to the amended motion to vacate, set aside, or correct sentence (Doc. 642) filed by Petitioner-Defendant Troy Anthony Coleman (hereinafter "Petitioner") and respectfully requests his motion be denied for the reasons stated below:

**I.      STATEMENT OF THE CASE**

**IA.      Course of Proceedings**

On April 19, 2012, a superseding indictment was filed charging Petitioner with Conspiracy to Distribute and Possess with Intent to Distribute Five (5) Kilograms or more of a Mixture and Substance Containing a Detectable Amount of Cocaine (Count One); Possession with Intent to Distribute a Detectable Amount of Cocaine (Count Seven); Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Count Eight); and Felon in Possession of a Firearm (Count Nine). (Doc. 50) Petitioner was later arrested on a federal arrest warrant, and on May 3, 2012, he appeared before Magistrate Judge Larry Bodiford and pled not guilty to all charges in the indictment. (Docs. 65 and

131) On May 15, 2012, a second superseding indictment was filed charging Petitioner with an additional criminal violation of Possession with Intent to Distribute Mixture and Substance containing Cocaine Base (Count Ten). (Doc. 160) On May 24, 2012, Petitioner appeared before Magistrate Judge Larry Bodiford, where he pled not guilty to the charges in the second superseding indictment. (Doc. 210)

On June 1, 2012, Petitioner filed a motion to suppress. (Doc. 212) On June 15, 2012, the Government responded in opposition to Petitioner's motion to suppress. (Doc. 256) On June 20, 2012, a hearing was held and this Court denied Petitioner's motion to suppress. (Docs. 257, 258) On August 9, 2012, a Plea Agreement, Cooperation Supplement, and Statement of Facts were filed, and Petitioner pled guilty to all counts against him. (Docs. 305, 307, 308) On November 5, 2012, the Government filed a 5K1.1 motion, recommending that Petitioner's sentence be reduced due to his substantial assistance. (Doc. 412)

On November 7, 2012, Petitioner was sentenced to 168 months' imprisonment as to Counts One, Seven, and Ten; 120 months' imprisonment as to Count Nine to run concurrently; 42 months' imprisonment as to Count Eight to run consecutively to Counts One, Seven, Nine, and Ten; ten years of supervised release as to Count One, six years of supervised release as to Counts Seven and Ten, five years of supervised release as to Count Eight, and three years of supervised release as to Count Nine, with all counts to run concurrently to one another; a $500.00 special monetary assessment; and a $1,000.00 fine. (Docs. 416, 421, 422) Petitioner's sentence was based upon the following: a total offense level of 29, and a criminal history category VI, which resulted in a guideline imprisonment range of a total maximum term of imprisonment of 300 months. (PSR-

Doc. 408, ¶¶ 106, 163) This 300 months was based upon a statutory minimum mandatory sentenced of 240 months on the narcotics' charges and a consecutive 60 months on the § 924(c) charges. (Doc. 408, ¶ 163) However, as set forth above, Petitioner received a total sentence of 210 months in prison due to the Government's 5K1.1 motion. Petitioner did not file a notice of appeal.

On November 6, 2013, Petitioner filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and memorandum in support thereof. (Doc. 636) On November 13, 2013, this Court ordered Petitioner to file an amended § 2255 motion as the original did not include the signature and certification page. (Doc. 639) On December 16, 2013, Petitioner filed an amended § 2255 motion and memorandum in support thereof. (Doc. 642) This Court ordered the Government to respond to Petitioner's amended motion by March 9, 2014. (Doc. 646) On January 16, 2014, Petitioner filed an affidavit in support of his amended § 2255 motion. (Doc. 647)

### IB. <u>Statement of Facts – Underlying Case (Doc. 307)</u>

In or about September 2011, the United States Drug Enforcement Agency ("DEA") began investigating a criminal drug-trafficking organization, known as the Knowles Drug-Trafficking Organization ("Knowles DTO"), which was involved with the acquisition, transportation, and distribution of multi-kilogram quantities of cocaine in the Bay County, Florida area. This investigation identified Freddie Lee Christopher Knowles, IV ("Knowles") as the instrumental member within the organization responsible for overseeing shipments of cocaine from the Southern/Eastern Districts of Texas and Southern District of Mississippi to the Northern District of Florida, Bay County area, where the cocaine was further distributed. Kelvin Rucker was the source of

supply ("SOS") for the Knowles DTO and was located in the Houston, Texas area. Kelvin Rucker would coordinate shipments of cocaine from Texas for delivery to the Knowles DTO. Couriers working at the instruction of Kelvin Rucker would deliver the cocaine to, and pick up money from, couriers working for the Knowles DTO. One such courier was David Isaac Rucker ("Rucker"), the brother of Kelvin Rucker. The hand-off between couriers generally occurred somewhere in Mississippi. The cocaine would then be transported to the Northern District of Florida, Bay County area, where the cocaine was broken down and distributed to other members of the Knowles DTO. Knowles' main courier was his girlfriend, Candis Marshae Walker ("Walker"). Distributors for the Knowles' DTO included, but were not limited to, Petitioner, John Jerome Fagin ("Fagin"), Christopher Mathis ("Mathis"), Willie James Morgan ("Morgan"), Willie Lamar Potter ("Potter"), Vincent M. Brown ("Brown"), Jimmie Lee Aikens, Jr. ("Aikens"), Jason Apollo Broxton ("Broxton"), and Tommy Chin Van Duong ("Duong"), who are all co-defendants in this case.

Knowles began selling ounce quantities of cocaine to Petitioner for $1,200 per ounce sometime in late 2010 or early 2011. By April or May 2011, Petitioner was purchasing four and one half to nine ounces of cocaine every week or two. Petitioner always paid for his cocaine up front. Finally, around August or September 2011, up until the date of Knowles' arrest, Petitioner began purchasing one kilogram of cocaine every three to four weeks from Knowles at a price of $36,000 per kilogram.

On January 19, 2012, investigators of the Bay County Sheriff's Office arrested Petitioner pursuant to an active felony arrest warrant. During the arrest, investigators seized cocaine and a Taurus .38 caliber revolver which Petitioner used for his protection

and to protect his narcotics trafficking. Subsequent to his arrest and release from custody, Petitioner purchased another one and one half kilograms of cocaine from Knowles in exchange for $45,000. This was the last time Petitioner purchased cocaine from Knowles before Knowles' arrest on February 12, 2012. After Knowles was arrested, Petitioner found a new source of supply for his narcotics, and when he was arrested in this case on May 2, 2012, Petitioner was in possession of cocaine base.

Subsequently, on July 19, 2012, agents seized $20,000 in United States currency of Petitioner's drug proceeds from Petitioner's father. On July 20, 2012, agents seized a Ruger 9 mm pistol, a Taurus .45LC/454 Casull/ .410 GA revolver, a Taurus 9 mm pistol, some ammunition, and a Second Chance Ballistic vest with a shock plate. Finally, on July 23, 2012, Petitioner's father delivered a cashier's check in the amount of $6,000 to DEA agents that represented $6,000 of Petitioner's drug proceeds that his father had deposited into his personal bank account.

## II.    GROUNDS ALLEGED BY PETITIONER (Doc. 642)

The allegations in Petitioner's amended motion can be set forth as three separate grounds upon which he requests relief:

1) Court Error related to the following issues:

    a.  the drug weight for which the Court held Petitioner accountable at sentencing; and

    b.  applying a 21 U.S.C. § 851 enhancement at sentencing based upon Petitioner's prior felony drug conviction[1];

---

[1] Petitioner's Grounds Three and Four.

2) Prosecutorial misconduct related to Count Ten of the Second Superseding Indictment and the information pertaining to drug weight as conveyed to the Grand Jury by the Government's witness[2]; and

3) Ineffective Assistance of Counsel related to the following issues:

    a. Counsel's failure to subpoena witnesses to testify on Petitioner's behalf at a suppression hearing;

    b. Counsel's failure to provide the Court with mitigating evidence at sentencing;

    c. Counsel was ineffective for advising Petitioner to plead guilty;

    d. Counsel's failure to object to the use of Petitioner's prior felony drug conviction for enhancement purposes pursuant to 21 U.S.C. § 851; and

    e. Counsel's failure to file a notice of appeal regarding Petitioner's excessive sentence.[3]

## III.   <u>LEGAL ARGUMENT</u>

Grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" <u>Lynn v. United States</u>, 365 F. 3d 1225, 1232 (11th Cir. 2004) (internal citations omitted). "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been

---

[2] Petitioner's Grounds One and Three.

[3] Petitioner's Grounds One, Two, and Four.

raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." Id., at 1232-33 (citations omitted).

Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless a petitioner establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Id., at 1234; Bousley v. United States, 523 U.S. 614, 623-24, 118 S. Ct. 1604, 1611-1612 (1998)(citations omitted). To show cause for procedural default, a petitioner must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [petitioner's] own conduct." Lynn, 365 F.3d at 1235.

## 1) **Court Error – Petitioner's First Claim:**

A challenge to the drug weight for which Petitioner was held responsible at sentencing and/or any enhancement the Court applied to Petitioner's statutory minimum mandatory sentence pursuant to 21 U.S.C. § 851 was ripe for direct appeal; however, it was not raised by the defendant. As such, Petitioner's claims related to any court errors that occurred at sentencing are barred as he has not shown cause for failing to raise these issues previously, nor has he shown any prejudice resulting from not raising them. Id. Even assuming, *arguendo*, these issues are ripe in the instant motion, Petitioner's claims related to court error fail on the merits.

### a) **Petitioner's Allegation Regarding Inflated Drug Quantity:**

Petitioner alleges the Court erred in utilizing an inflated drug weight when calculating his sentencing guidelines, and ultimately, in sentencing him. The basis of

Petitioner's claim appears to be the 2.3 net grams of crack cocaine seized from Petitioner at the time of arrest on the federal arrest warrant in May 2012. (Doc. 642, pg. 14) Based upon this seizure of crack cocaine, Petitioner was charged in Count Ten of the second superseding indictment with possession with intent to distribute a mixture or substance containing cocaine base.[4] However, these 2.3 net grams of crack cocaine were not included in the drug weight calculations for sentencing purposes "due to the low amount" and because it would not impact the sentencing guidelines. (PSR-Doc. 408, ¶ 104)

Petitioner is responsible, and was held responsible at sentencing, for the drug quantities set forth in the statement of facts that he signed in accordance with his guilty plea. (Docs. 305, 307) By his signature, Petitioner agreed that "by April or May 2011, [he] was purchasing four and half to nine ounces of cocaine every week or two." (Doc. 307, pg. 3) The "conservative calculation" of the drug quantities purchased by Petitioner would be 60 ounces or 1.701 kilograms for that time period. (PSR-Doc. 408, pg. 21, ¶ 96) Petitioner also agreed that between August or September 2011 through the date of Knowles' arrest, he was "purchasing one kilogram of cocaine every three to four weeks from Knowles." (Doc. 307, pg. 4) The calculation of drug quantities for that time period would equal 7 kilograms. Additionally, on January 19, 2012, Petitioner was arrested on an active state felony warrant and was found in possession of cocaine at that time. While on bond in that state case, he purchased another 1.5 kilograms of cocaine from Knowles. (PSR-Doc. 408, pg. 21, ¶ 97) In total, Petitioner was held responsible for 10.201

_____

[4] At the time of the second superseding indictment, DEA agent Brian Lammers testified before a Grand Jury that the amount of crack cocaine seized from Petitioner was over 70 gross grams as that was the information DEA had available at the time: i.e. the gross weight equaled the weight of the crack cocaine prior to the removal of any packaging. Subsequently, the crack cocaine was sent to the DEA laboratory for analysis, and it was determined that the total net weight of the crack cocaine, after all of the packaging materials had been removed, was 2.3 grams.

kilograms of cocaine at sentencing, which he agreed to when he signed his statement of facts. (PSR-Doc. 408, pg. 21, ¶ 97 and Doc. 307)

Moreover, the records of proceedings in this case directly contradict Petitioner's claims of an inflated drug weight. On August 9, 2012, during the change of plea, the following exchange took place:

> THE COURT: Now, do you agree that **based upon the statement of facts, which you have admitted are true**, that the government does have evidence that it could present to a jury at trial, and with that evidence, which **you have already admitted as true**, the jury could find you guilty? (Emphasis added)
>
> DEFENDANT: **Sir, yes, sir.** (Emphasis added)

(Change of Plea Transcript, pg. 13) Additionally, on November 7, 2012, a sentencing hearing took place before the District Court, and the following exchange took place:

> MR. STONE: We had some objections. We filed them in –with the Court. Most of them are fairly minor factual quibbles about prior events. We did register an objection in terms of drug weight, which we have since—I had to do this pretty quickly, and after meeting with my client and discussing it again in detail, **we have decided to withdraw the objections that we lodged**, particularly on page 2 of my response to the draft presentence investigation report. **Our weight, drug weight objections amounted to I think a two-level difference, but we have determined to withdraw that objection, Your Honor**. (Emphasis added)
> …
> MS. RISINGER: Your Honor, just for the record, to be clear, I believe that the objections that Mr. Stone is withdrawing are paragraphs 207[5] in the addendum.
>
> COURT: Mm-hmm.
>
> MS. RISINGER: Which the probation officer's response to that was 208[6]. I believe that objection is being withdrawn, as well as

---

[5] "Counsel for defense objects to the statement regarding the frequency with which the defendant was purchasing cocaine and states that it should read, 'By April or May 2011, Coleman was purchasing four to nine ounces of cocaine every three or four weeks or more.'" (Doc. 408, pg. 40, ¶ 207)

the objection contained in paragraph 211[7]; and the accompanying probation officer's response is contained within paragraph 212[8]. I believe that one is being withdrawn as well.

COURT: Okay.

(Sentencing Transcript, pgs. 3-4)

In this case, as in most drug cases, not all drugs that were trafficked were recovered. In such a situation, the district court must approximate the quantity of the controlled substance for which the defendant must be held accountable. U.S.S.G. § 2D1.1 comment (n. 12); United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005) (citing United States v. Frazier, 89 F.3d 1501, 1506 (11th Cir.1996)). In "estimating the quantity of drugs attributable to a defendant, a court may base its computation on evidence showing the average frequency and amount of a defendant's drug sales over a given period of time." Rodriguez, 398 F.3d at 1296 (citing Frazier, 89 F.3d at 1506). Sentencing may therefore be based on "fair, accurate and conservative estimates of the quantity of drugs attributable to a defendant." Id. (quoting United States v. Zapata, 139 F.3d 1355, 1359 (11th Cir. 1998)). This is exactly what occurred in this case. Petitioner cannot show error in the Court's calculation of his drug weight, and he cannot demonstrate how the outcome of his sentence would have been different, especially in light of the applicability of the statutory minimum mandatory sentences and

---

[6] "The information in this paragraph was obtained from the written statement of facts for the defendant's guilty plea, which was signed by the defendant and his attorney on August 9, 2012. The objection is unresolved and requires court finding." (Doc. 408, pg. 40, ¶ 208)

[7] "The defendant, through counsel, advises that the base offense level of 32 may be too high, due to the incorrect determination of drug weight. Since the defendant reviewed and signed the statement of facts for his guilty plea on August 9, 2012, he has given considerable thought to the history, the amount and frequency of cocaine purchases he made from Knowles. The defendant states that he should be held responsible for between 138 ounces and 150 ounces of cocaine. The defendant provided a detailed account of the change in drug weights in his objection." (Doc. 408, pgs. 40-41, ¶ 211)

[8] "As this officer relied on the statement of facts to determine drug weight, this issue remains unresolved and may affect sentencing. Therefore, this issue requires court finding." (Doc. 408, pg. 41, ¶ 212)

the reduced sentence he ultimately received due to the Government's 5K1.1 motion. Therefore, Petitioner's claim fails on the merits, and he is not entitled to relief.

b) **Petitioner's Allegation Regarding the Applicability of an Enhancement for a Prior Felony Drug Conviction Pursuant to 21 U.S.C. § 851:**

Petitioner also asserts the Court erred in applying an enhancement pursuant to 21 U.S.C. §851. First, Petitioner argues that under <u>Descamps v. United States</u>, his prior convictions do not qualify as predicates for enhancement as he was sentenced under the Florida Youthful Offender Act. 133 S. Ct. 2276 (2013); (Doc. 642, pgs. 24-25) Petitioner received an adult conviction and sentence of five years imprisonment, each count to run concurrent, for the referenced prior convictions, under the Florida Youthful Offender Act. (PSR-Doc. 408, pgs. 24-27, ¶ 119, 121, 123, 124) Accordingly, in a series of unpublished opinions, the Eleventh Circuit has consistently held that a prior state conviction for which the defendant was sentenced as a youthful offender under state law may be counted as a predicate offense for enhancement purposes so long as the defendant received an adult conviction and a sentence of more than one year and one month. <u>See</u>: <u>United States v. Ortiz</u>, 413 Fed. Appx. 114, 2011 WL 13579 at *6 (11th Cir. January 4, 2011); <u>United States v. Cortes</u>, 427 Fed. Appx. 803, 2011 WL 2079401 (11th Cir. May 25, 2011). Therefore; his prior convictions were appropriately used as predicate offenses for enhancement purposes.

Second, Petitioner alleges the District Court erred in applying a § 851 enhancement and enhanced penalties under 21 U.S.C. § 841 pursuant to <u>Alleyne v. United States</u>. 133 S. Ct. 2151 (2013); (Doc. 642) In <u>Alleyne,</u> the Supreme Court, overruling <u>Harris v. United States</u>, 536 U.S. 545 (2002), held that any fact that increases the minimum mandatory sentence for a crime is an element of that crime, and must be

submitted to a jury. A jury would not be necessary if the right to a jury was waived by Petitioner, or as in this case, admitted to by the statement of facts underlying the minimum sentence during Petitioner's guilty plea and/or sentence. (Docs. 305, 307) More importantly, however, the Supreme Court decided <u>Alleyne</u> on June 17, 2013; after the defendant's conviction had become final. The Eleventh Circuit has recently held in an unpublished opinion that "<u>Alleyne</u>'s rule does not apply retroactively on collateral review." <u>Chester v. Warden</u>, 2014 WL 104150 *4 (11th Cir. Jan. 13, 2014) (citations omitted). Therefore, Petitioner is not entitled to relief on this issue.

**2) <u>Prosecutorial Misconduct – Petitioner's Second Claim:</u>**

Petitioner alleges that the Government engaged in prosecutorial misconduct by allowing false information to be presented to the Grand Jury regarding drug weight. Petitioner's assertion of prosecutorial misconduct was ripe for direct appeal; however, it was not raised by the defendant. As such, this assertion is barred as the defendant has not shown cause for failing to raise it previously, nor has he shown prejudice resulting from not raising it. <u>Lynn</u>, 365 F.3d at 1232-35.

Even assuming, *arguendo*, Petitioner's assertion is properly before this Court, Petitioner's allegations are without merit. To establish prosecutorial misconduct, a two-element test must be met: (1) the prosecutor's remarks must be improper, and (2) the remarks prejudicially affect the substantial rights of the defendant. *United States v. Schmitz*, 634 F.3d 1247, 1267 (11th Cir. 2011); <u>United States v. Merrill</u>, 513 F.3d 1293, 1307 (11th Cir 2008). The basis of Petitioner's prosecutorial misconduct claim relates to DEA agent Brian Lammers' testimony before a Federal Grand Jury regarding the weight of the crack cocaine seized from Petitioner at the time of his arrest on the federal arrest

warrant in May 2012. (Doc. 642, pg. 14) DEA agent Brian Lammers testified before a Grand Jury that the amount of crack cocaine seized from Petitioner was over ***70 gross grams***, which was based upon the information DEA had available at the time: i.e. the gross weight equaled the weight of the crack cocaine prior to the removal of any packaging. Based upon this seizure of crack cocaine, Petitioner was charged in Count Ten of the second superseding indictment with possession with intent to distribute a mixture or substance containing cocaine base; no threshold amount of crack cocaine was alleged in Count Ten. Subsequently, the crack cocaine was sent to the DEA laboratory for analysis, where it was determined that the substance was, in fact, crack cocaine with a ***total net weight*** of 2.3 grams. The new weight of the crack cocaine was determined after the forensic analyst removed all of the packaging materials. There is a marked difference between the gross weight of narcotics, which, as is the case here, agent Lammers testified to, and the net weight. There was no false testimony by Lammers. Further, by signing the statement of facts that was agreed to and entered at the time of Petitioner's plea of guilty, Petitioner agreed that he was in possession of crack cocaine at the time of his arrest on May 2, 2012, and he pled guilty to said Count Ten. (Doc. 307, pg. 4) As a result, Petitioner cannot show that (1) the remarks were improper, or (2) the remarks caused Petitioner prejudice. Therefore, Petitioner is not entitled to relief on this issue.

### 3) **Ineffective Assistance of Counsel – Petitioner's Third Claim:**

Ineffective assistance of counsel claims are generally not cognizable on direct appeal, and are properly raised by a § 2255 motion, regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503, 123 S.Ct. 1690, 1693 (2003); *see also* United States v. Bender, 290 F.3d 1279, 1284 (11th

Cir. 2002); United States v. Jiminez, 983 F.2d 1020, 1022 n.1 (11th Cir. 1993). To establish a violation of constitutional rights by previous counsel, a petitioner must demonstrate *both* that counsel's performance was below an objective and reasonable norm, and that he was prejudiced by this inadequacy. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984); Williams v. Taylor, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511 (2000); Gaskin v. Secretary for Department of Corrections, 494 F.3d 997, 1002 (11th Cir. 2007). In applying Strickland, the court may dispose of an ineffective assistance claim if Petitioner fails to carry his burden on *either* prong. 466 U.S. at 697. Petitioner is obligated to provide factual support for his contentions regarding alleged deficiencies in his counsel's performance. Smith v. White, 815 F.2d 1401, 1406-07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (*citing* Blackledge v. Allison, 431 U.S. 63, 74; 97 S.Ct. 1621, 1629 (1977)).

In determining whether counsel's conduct was below an objective and reasonable norm, the reviewing court must (with due deference) consider "whether counsel's assistance was reasonable considering all circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Secretary for Department of Corrections, 480 F.3d 1092, 1099 (11th Cir. 2007); Atkins v. Singletary, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990) (*citing* Harich v. Dugger, 844 F.2d 1464, 1469 (11th Cir. 1988)); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing petitioner was "not entitled

to error-free representation"). Counsel's performance should be evaluated with a high degree of deference without the distorting effects provided by hindsight. Strickland, 466 U.S. at 689.

To show counsel's performance was unreasonable, a petitioner must establish that "no competent counsel would have taken the action that his counsel did take." Newland v. Hall, 527 F.3d 1162, 1184 (11th Cir. 2008); Gordon v. U.S., 518 F.3d 1291, 1301 (11th Cir. 2008); U.S. v. Freixas, 332 F.3d 1314, 1319-1320 (11th Cir. 2003)(*quoting* Brownlee v. Haley, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting Strickland, 466 U.S. at 687, 689-90 and Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000)(*en banc*)). Further, when examining the performance of an experienced trial counsel (such as is the case with Petitioner's counsel here, Mr. Michel L. Stone), the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n. 18; Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001).

The Eleventh Circuit has recognized that given the principles and presumptions set forth above, "cases in which habeas petitioners can properly prevail... are few and far between." Chandler, 218 F.3d at 1313. Rightly so, because the test is *not* what the 'best' lawyer would do, or even what most 'good' lawyers might do; rather, whether a *reasonable* lawyer might have acted similarly as counsel in the case at hand. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (*quoting* Adams v.

Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983).  Further, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  Strickland, 466 U.S. at 686.  "The purpose of ineffectiveness review is not to grade counsel's performance."  Chandler, 218 F.3d at 1313; *accord* Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001).  "To state the obvious: the trial lawyers, in every case, could [always] have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  Chandler, 218 F.3d at 1313; *accord* Grayson, 257 F.3d at 1217; Johnson, 256 F.3d at 1176.

"The burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable."  Chandler, 218 F.3d at 1313.  "[P]etitioner must establish that particular and identified acts or omissions of counsel 'were outside the wide range of professionally competent assistance.'"  Id., at 1314 (*quoting* Burger v. Kemp, 483 U.S. 776, 795 (1987)); *accord* Freixas, 332 F.3d at 1319; Johnson, 256 F.3d at 1176.  "Because constitutionally acceptable performance is not narrowly defined, but instead encompasses a 'wide range,' a petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden."  Williams v. Head*, 185 F.3d 1223,* 1227 (11th Cir. 1999), *quoting* Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995); *accord* Freixas, 332 F.3d at 1319; Chandler, 218 F.3d at 1314.

Courts have held, "[j]udicial scrutiny of counsel's performance must be highly deferential."  Chandler, 218 F.3d at 1314; *quoting* Strickland, at 689; *accord* Freixas, 332

F.3d at 1319. Such deference is necessary "because the craft of trying cases is far from an exact science; in fact it is replete with uncertainties and obligatory judgment calls." Grayson, 257 F.3d at 1216; *quoting* Bolender v. Singletary, 16 F.3d 1547, 1557 (11th Cir. 1994). A reviewing court "must avoid second-guessing counsel's performance: '[I]t does not follow that any counsel who takes an approach [which a reviewing court] would not have [necessarily] chosen is guilty of rendering ineffective assistance.' Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrates ineffectiveness." Chandler, 218 F.3d at 1314 (*quoting* Waters, 46 F.3d at 1522). In "reviewing counsel's performance, a court must avoid using 'the distorting effects of hindsight' and evaluate the reasonableness of counsel's performance 'from the perspective at the time.'" Chandler, 218 F.3d at 1316 (quoting Strickland, 466 U.S. at 689). "The widespread use of the tactic of attacking trial counsel by showing what 'might have been' proves that nothing is clearer than hindsight--except perhaps the rule that we will not judge trial counsel's performance through hindsight." Grayson, 257 F.3d at 1216 (quoting Waters, 46 F.3d at 1514).

Petitioner further must "affirmatively prove prejudice." Strickland, 466 U.S. at 693. Like the "performance" prong, "the 'prejudice' prong is difficult to meet." Johnson, 256 F.3d at 1177. "It is not enough for a petitioner to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. Instead, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding *would* have been different." Id., at 694. "A finding of prejudice requires proof of 'unprofessional errors so egregious that the trial was rendered unfair and the verdict was rendered suspect.'" Johnson, 256

F.3d at 1177; *quoting* <u>Edmonds v. Peters</u>, 93 F.3d 1307, 1313 (7th Cir. 1996); *accord* <u>Lockhart v. Fretwell</u>, 506 U.S. at 369, 113 S. Ct. at 842. Finally, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." <u>Meeks v. Moore</u>, 216 F.3d 951, 960 (11th Cir. 2000).

Numerous instances of errors or mistakes by defense counsel at sentencing have not been held to constitute ineffective assistance of counsel. *See* <u>Guyton v. United States</u>, 447 Fed. Appx. 136 (11th Cir. 2011) (holding that counsel was not ineffective for failing to argue that defendant's prior conviction could not be used as a predicate for the career offender enhancement); <u>United States v. Lattimore</u>, 345 Fed. Appx. 506 (11th Cir. 2009) (unpublished) (holding that counsel was not ineffective for failing to object to an enhancement for obstruction of justice); <u>Hutcherson v. United States</u>, 425 Fed. Appx. 801 (11th Cir. 2011) (unpublished) (holding that counsel was not ineffective for failing to object to PSR recommendation that defendant's prior conviction was a crime of violence). If Petitioner cannot satisfy both the reasonableness prong and the prejudice prong of the <u>Strickland</u> test, his claim that his trial counsel was ineffective will not prevail.

### a)  <u>Petitioner's Allegation that his Counsel was Ineffective for Failing to Subpoena Witnesses to Testify at his Suppression Hearing:</u>

First, Petitioner alleges that his counsel was ineffective for failing to subpoena witnesses to testify on his behalf at the motion to suppress hearing. (Doc. 642) Counsel did, in fact, subpoena witnesses to testify at the motion to suppress hearing held on June 20, 2012. Mr. Stone called witnesses Jimmy Warr and David Haubrich to testify on

behalf of Petitioner. (Motion to Suppress Transcript, pgs. 6-13, 117-127) Nevertheless, Petitioner alleges that Mr. Stone failed to interview and subpoena a man by the name of Grady (last name unknown) and a man named Charles Baker. Petitioner fails to demonstrate how the testimonies of these two men would have changed the outcome of the suppression hearing.

Furthermore, regardless of whom counsel could have subpoenaed for the hearing, no witness could have refuted the Court's legal findings in its June 21, 2012, Order denying Petitioner's motion to suppress. (Doc. 258) Petitioner is making a bare, conclusory allegation of ineffective assistance, which is insufficient to satisfy the Strickland test, and he cannot show how his counsel's performance fell below an objective and reasonable norm, or how he was prejudiced by this inadequacy. Therefore, Petitioner is not entitled to relief.

**b) <u>Petitioner's Allegation that his Counsel was Ineffective for Failing to Proffer Mitigating Evidence at and Before Sentencing:</u>**

Second, Petitioner alleges his counsel was ineffective for failing to proffer mitigating evidence at and before sentencing. (Doc. 642) Petitioner fails to set forth what mitigating evidence Mr. Stone could have investigated and presented at sentencing that would have resulted in a different outcome. Moreover, Mr. Stone did present testimonies of both Petitioner's father and girlfriend in addition to speaking on behalf of Petitioner himself. The Government is left wondering what effort could counsel have undertaken, that he *did not*. Petitioner's bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. Therefore, Petitioner is not entitled to relief on this issue.

### c) **Petitioner's Allegation that his Counsel was Ineffective for Advising Petitioner to Plead Guilty:**

Petitioner further alleges Mr. Stone was ineffective for prematurely advising Petitioner to plead guilty. (Doc. 642, pg. 19) However, the record contradicts Petitioner's allegations as follows:

> THE COURT: Are you pleading guilty of **your own free will** because you are guilty of the charges? (Emphasis added)
>
> DEFENDANT: **Sir, yes, sir.** (Emphasis added)
>
> THE COURT: Now, have you had sufficient time to talk to your lawyer about your case?
>
> DEFENDANT: Sir, yes, sir.
>
> THE COURT: Has your lawyer answered all of your questions?
>
> DEFENDANT: Sir, yes, sir.
>
> THE COURT: **Are you satisfied with the advice your lawyer has given you?** (Emphasis added)
>
> DEFENDANT: **Sir, yes, sir.** (Emphasis added)
>
> THE COURT: **Do you have any complaints about your lawyer?** (Emphasis added)
>
> DEFENDANT: **No, sir.** (Emphasis added)

(Change of Plea Transcript, pgs. 14-15) Petitioner utterly fails to show how his counsel's performance fell below an objective and reasonable norm, or how he was prejudiced by this inadequacy. In fact, it was due to Petitioner's plea of guilty and subsequent cooperation with the Government that he received a 30% reduction in his sentence due to the Government's filing of a 5K1.1 motion. (Docs. 408, 412, 421) Petitioner cannot satisfy the <u>Strickland</u> test, and therefore, he is not entitled to relief on this issue.

**d) Petitioner's Allegation that his Counsel was Ineffective for Failing to Object to the Applicability of an Enhancement Pursuant to 21 U.S.C. § 851:**

Next, Petitioner alleges that counsel was ineffective for failing to object to a prior conviction used for enhancement under 21 U.S.C. § 851. (Doc. 642) Again, the record of the November 7, 2012, sentencing hearing contradicts Petitioner's claim as follows:

> THE COURT: All right. Mr. Coleman, I need to confirm this on the record, and I'm going to ask you now: Do you admit or deny that on or about November 27, 2007, **you were convicted of trafficking in hydrocodone, a felony drug offense** in the Circuit Court for the 14th Judicial Circuit for Bay County, Florida, Case Number 06-003981. (Emphasis added)
>
> DEFENDANT: **Sir, yes, sir.** (Emphasis added)
>
> THE COURT: **Do you admit that—** (emphasis added)
>
> DEFENDANT: **Sir, yes, sir.** (Emphasis added)
>
> THE COURT: **--that conviction is correct?** (Emphasis added)
>
> DEFENDANT: **Sir, yes, sir.** (Emphasis added)
>
> THE COURT: Is that as far as we need to go with that?
>
> MS. RISINGER: I believe so, Your Honor.

(Sentencing Transcript, pg. 6) Petitioner again fails to demonstrate how the outcome of his sentence would have been different based upon the record of proceedings as Petitioner admitted his guilt to the prior conviction used for enhancement under 21 U.S.C. § 851. Therefore, Petitioner is not entitled to relief.

**e) Petitioner's Allegation that his Counsel was Ineffective for Failing to File a Notice of Appeal:**

Lastly, Petitioner alleges counsel was ineffective for failing to file a notice of appeal regarding excessive sentencing. (Doc. 642, pg. 19-20) Petitioner sets forth that he

directed Mr. Stone, in writing, to file a notice of appeal on his behalf. Petitioner attaches a copy of said letter and a copy of half of an envelope as "Exhibit A." The Government questions the authenticity of "Exhibit A." (Doc. 642, Attached "Exhibit A")

Additionally, in evaluating the credibility of each of Petitioner's claims set forth under subheading 3 above, which form the basis for his overall ineffective assistance of counsel claim, this Court should consider the background of the accused attorney(s). If he is an experienced trial counsel, the presumption that his conduct was reasonable is strong. Fugate, 261 F.3d at 1216. In this particular case, defense counsel for Petitioner – Michel L. Stone – is an experienced criminal defense practitioner, who was admitted to the Florida Bar on September 11, 1978, and has had no disciplinary actions. (Exhibit 1) Petitioner's allegations are not supported by the record and fail to meet the standard required for a successful ineffective assistance claim. Petitioner has failed to show how Petitioner was actually prejudiced by Mr. Stone's alleged 'failures'. As the record in this case demonstrates, Mr. Stone did everything a reasonably prudent attorney would have done in his representation and defense of Petitioner, including at Petitioner's guilty plea and sentencing. To now retrospectively analyze counsel's representation and conduct in the case and suggest that it was less than highly effective is to employ the use of very analytical tool which the appellate courts have specifically admonished *should not* be employed. Strickland, 466 U.S. at 689.

But even employing the benefit of hindsight—one is left asking what effort could counsel have undertaken, *that he didn't*? In short, Mr. Stone's conduct in this case was not unreasonable, and any competent attorney would have undertaken Petitioner's representation in a like fashion with a similar outcome. Accordingly, Petitioner has failed

to meet the burden necessary to prevail of his claim of ineffective assistance of counsel, and any relief sought by Petitioner should be denied.

## IV.    STATEMENT REGARDING EVIDENTIARY HEARING

A court must conduct an evidentiary hearing on a motion under § 2255 "unless the motion and files and records conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004). A petitioner must support his allegations with, at the very least, a proffer of some credible, supporting evidence in order to be entitled to such a hearing. *See, e.g.*, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006) (*citing* Drew v. Dept. of Corrections, 297 F.3d 1278, 1293 (11th Cir. 2002)). The petitioner carries the burden of establishing the need for an evidentiary hearing. Birt v. Montgomery, 725 F.2d 587, 591 (11th Cir. 1984); Schultz v. Wainwright, 701 F.2d 900, 901 (11th Cir. 1983).

Further, when a court "can conceive of a reasonable motivation for counsel's actions," it should "deny a claim of ineffective assistance without an evidentiary hearing." Gordon v. United States, 518 F.3d 1291, 1302 (11th Cir. 2008).

With regards to each of the claims asserted by Petitioner, except his allegation regarding his counsel's failure to file a notice of appeal, the defendant has not met his burden and the record conclusively shows that the defendant's claims are without merit. Therefore, any relief sought by Petitioner with regards to those claims should be denied. However, with regards to the notice of appeal issue, Petitioner has provided the Court with supporting evidence in the form of a letter, attached to his Petition as Exhibit A.

Because this Court will have to make a credibility determination, the Petitioner is entitled

to an evidentiary hearing on this limited issue only.

V.    **CONCLUSION**

**WHEREFORE**, the United States of America requests this Court to DENY

Petitioner's motion.

Respectfully submitted,

PAMELA C. MARSH
United States Attorney

*/s/ Kathryn Risinger*
Kathryn Risinger
Assistant United States Attorney
Texas Bar No:  24046723
30 West Government St.
Panama City, FL 32401-2758
(850) 785-3495

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that this motion is being filed via the Court's electronic system on this 6th day of March 2014, and that a true and correct copy of the foregoing will be placed in the U.S. Mail to Troy Coleman #21588-017, USP Coleman 1, P.O. Box 1033, Coleman, FL 33521, on the 6th day of March 2014.

*/s/ Kathryn Risinger*
Kathryn Risinger

The Florida Bar
www.floridabar.org

# Michel Leon Stone

**Member in Good Standing**                    **Eligible to practice in Florida**

ID Number:          - 256791
Address:            116 E 4TH St
                    PO Box 532
                    Panama City, Florida 324020532
                    United States
Phone:              850.785.7272
E-Mail:
vCard:               ?

County:             Bay
Circuit:            14
Admitted:           09/11/1978

**10-Year Discipline       None
History**

The Find a Lawyer directory is provided as a public service. The Florida Bar maintains limited basic information about attorneys licensed to practice in the state (e.g., name, address, year of birth, gender, law schools attended, admission year). However, through this directory The Florida Bar allows individual attorneys the opportunity to provide for public information certain expanded personal and professional data. It is the attorney's responsibility to routinely review and update those expanded listings. The information contained in those expanded listings is presented by the Bar "as is" with no warranty of any kind, express or implied. The Florida Bar, its Board of Governors, employees, and agents thereof are not responsible for the accuracy of that additional data. Publication of attorneys' contact information within this listing should not be construed as their consent to receive unsolicited communications in any form. Certain unauthorized uses of this data may result in civil or criminal penalties. The Find a Lawyer directory is not a lawyer referral service.

*[Revised: 12-14-2013]*
© 2014 The Florida Bar | Disclaimer | Top of page | Get Adobe Acrobat

**GOVERNMENT
EXHIBIT
1**