IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.   Case Nos.:   5:12cr5/RS/EMT
                   5:13cv374/RS/EMT

TROY ANTHONY COLEMAN

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (doc. 642). The Government filed a response (doc. 656), and Defendant filed a reply and a supplemental declaration (docs. 660, 695). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). The undersigned held an evidentiary hearing on February 9, 2015. After careful consideration of the testimony and evidence adduced at the hearing, it is the opinion of the undersigned that Defendant is entitled to relief on his claim that counsel was constitutionally ineffective for his failure to consult with Defendant, or follow Defendant's wishes, regarding an appeal.

### PROCEDURAL BACKGROUND

Defendant was charged in five counts of a fifteen-count second superseding indictment with conspiracy to possess with intent to distribute five kilograms or more of cocaine ("Count One"); possession with intent to distribute cocaine ("Count Seven"), possession of a firearm in furtherance of a drug trafficking crime ("Count Eight"), possession of a firearm by a convicted felon ("Count Nine"), and possession with intent to distribute cocaine base ("Count Ten") (doc. 160). The

Government filed a notice of enhancement information in which it identified three prior felony controlled substance convictions (doc. 187).

Defense counsel Michel L. Stone filed a motion to suppress the fruits of two searches allegedly conducted without probable cause (doc. 212), and the district court denied the motion after a hearing (doc. 258).

Defendant entered a plea of guilty pursuant to a written plea agreement on August 9, 2012 (*see* docs. 305–308, 652). Before accepting his plea, the court explained Defendant's rights to him and the possible sentences he faced, and Defendant acknowledged that he generally understood the sentencing guidelines (doc. 652 at 11–12). Defendant also acknowledged that he understood if his sentence was different than what his lawyer predicted, he would be unable to take back his guilty plea (*id*. at 12). Defendant admitted that the Statement of Facts (doc. 307) he signed was true; he also admitted he had read the plea agreement and supplement carefully and discussed them with counsel, and that they represented his entire agreement with the Government (doc. 652 at 13–14). Defendant indicated that he was satisfied with his counsel and that he had adequate time to discuss his case; his counsel assured the court that Defendant's plea was freely and voluntarily made (*id*. at 15). The court then accepted Defendant's guilty plea to the five charges (*id*. at 16, 17).

A draft Presentence Investigation Report ("PSR") was disclosed to the defense on October 15, 2012 (doc. 403). Pursuant to the draft PSR, Defendant was held accountable for 10.201 kilograms of cocaine powder, which corresponded to a base offense level of 32 (doc. 403, draft PSR, ¶ 106). After a three-level downward adjustment for acceptance of responsibility, his total offense level was 29 (*id*., ¶¶ 107–115). Defendant filed objections to the draft PSR, some of which were in conflict with portions of the Statement of Facts supporting his guilty plea (doc. 406). Acknowledging the conflict, Defendant's counsel noted in the objections that his client "has since given considerable thought to the history" and believes that certain portions of the Statement of Facts, specifically pages 3–4, were inaccurate (*id*. at 2). Counsel suggested that based on revised quantities of cocaine, Defendant's base offense level should be 30 (*id*.). No changes were made to the drug quantity calculation in the final PSR (*see* doc. 408, final PSR, ¶ 106). The 24-year-old Defendant had 15 criminal history points and thus a criminal history category of VI (*id*., ¶¶ 119–127). The applicable guidelines range, after adjustments were made to account for the statutory

minimum sentences, was 240 months plus a mandatory consecutive term of 60-months imprisonment (*id*., ¶ 163).

At sentencing, which occurred on November 7, 2012, defense counsel reported that after further discussion with Defendant, they had decided to withdraw the objection to drug quantity (doc. 655 at 3). Defendant admitted two prior felony drug convictions in response to a query from the court (*id*. at 6). Then, after hearing argument from counsel and the testimony of Defendant's father and long-time girlfriend, the court sentenced Defendant to a below-guidelines term of 210-months imprisonment. The term consisted of 168 months on Counts One, Seven, and Ten, to run concurrently; 120 months on Count Nine, to run concurrently with the sentence imposed on Counts One, Seven, and Ten; and an additional consecutive term of 42 months on Count Eight (*id*. at 15). The court also ordered a ten-year term of supervised release (*id*. at 17). After imposing sentence, the court advised Defendant that he had the right to appeal his sentence, that a notice of appeal must be filed within fourteen days from the date of sentencing, and that the clerk of court could file a notice of appeal on his behalf upon request (*id*. at 18).

Judgment was entered on November 9, 2012 (docs. 421, 422). Nothing further was filed until Defendant filed his motion to vacate, which was received by the clerk of this court on November 6, 2013 (doc. 636). In the subsequently-filed amended § 2255 motion, Defendant separates his claims into four grounds for relief, asserting error on the part of the Government and the court, as well as ineffective assistance of counsel. One of Defendant's sub-claims, raised as part of Ground Two in his motion, is that counsel failed to file a direct appeal, as Defendant requested. The undersigned directed Defendant to provide additional and specific information with respect to this claim in his reply (doc. 686), and after receiving and reviewing the contents of same (*see* doc. 695), held an evidentiary hearing on this claim on February 9, 2015.

## LEGAL ANALYSIS

<u>General Standard of Review</u>

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is

otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Franklin, 694 F.3d 1, 8 (11th Cir. 2012). In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

Ground Two–Failure to File an Appeal[1]

As part of Defendant's second ground for relief, Defendant contends that counsel was constitutionally ineffective because he failed to file an appeal of Defendant's "excessive" sentence.

The issue of counsel's duty and obligation with respect to his client's right to appeal has been well litigated. The Supreme Court has unequivocally stated that if a defendant specifically instructs his attorney to file a notice of appeal, a lawyer who disregards this instruction acts in a manner that is professionally unreasonable. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (citing Rodriguez v. United States, 395 U.S. 327 (1969); Peguero v. United States, 526 U.S. 23, 28 (1999)). Since a defendant whose lawyer fails to file an appeal upon request has been denied an entire judicial proceeding, prejudice is presumed and the defendant is entitled to a belated appeal. *Id*. at 483; Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005); Cunningham v. United States, 378 F. App'x 955, 957 (11th Cir. 2010).

---

[1] The court addresses this claim first, because granting relief on this claim moots Defendant's other claims.

However, in cases where a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, counsel's performance can still be constitutionally deficient if counsel failed in his or her duty to consult with the defendant regarding an appeal. Flores-Ortega, 528 U.S. at 478. Consultation involves "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*.  If counsel has consulted with the defendant, of course, the question of deficient performance is easily answered; counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.  *Id*.  In this case, Defendant asserts that he expressly instructed counsel to file an appeal, both verbally and in writing, and counsel did not follow this instruction; Defendant also asserts that counsel failed to ask him if he wished to appeal (doc. 642).

The Written Record

Appended to Defendant's amended motion to vacate is a handwritten note dated November 7, 2012, that Defendant claims he wrote to Attorney Stone (doc. 642 at 25).  It states in its entirety:

> Mike –
> Hello Mike, not feeling so good here right now.  I believe there were mistakes made.
> Please remember to file the notice of appeal.  I appreciate it.  I'll be in contact.

(*id*. at 36).

Other than to "question the authenticity" of Defendant's submission, the Government offered nothing to rebut Defendant's claim (*see* doc. 656 at 22).

In his reply, Defendant appears to abandon his assertion that he verbally requested that counsel file a notice of appeal, although he asserts he has witnesses who will testify that within ten days of sentencing Defendant advised them he had been trying without success to contact Attorney Stone to direct him to file a notice of appeal (doc. 660).  Defendant does not specify what actions he took to attempt to contact counsel (other than the letter attached to his amended motion).

As noted *supra*, after reviewing Defendant's reply the court directed him to file a supplemental sworn statement with additional information regarding his claim (doc. 686), and Defendant did so (doc. 695).  In his declaration, Defendant states that he and counsel "discussed appeals somewhat" before his sentencing (*id*. at 2).  He further indicates that even before sentencing he told counsel that he believed that the drug weight testimony provided to the grand jury was

inflated, and that this issue should be brought up on direct appeal (*id*. at 3).  Defendant explains that he was "in shock" at sentencing and apparently did not verbally request that counsel file an appeal at that time (*id*. at 2).  Defendant states that it was after he went back to the Washington County Jail that evening that he wrote the letter to counsel asking him to please "remember to file a notice of appeal" (*id*. at 2–3).  Defendant notes that counsel did not explain enhancements, mandatory minimum sentences, or other issues to him, and thus he was unable to make an intelligent decision with respect to pursuing an appeal (*id*. at 3).  Defendant also states that after sentencing he "thinks" counsel came to see him one final time and that Defendant asked counsel if there was any issue on which he could appeal and, if so, to please do so (*id*.).  He further asserts that his father, Anthony Livecche, spoke to counsel at Defendant's request and that counsel was aware Defendant wanted to appeal (*id*. at 4).  Defendant admits that he "noticed" that counsel did not file the notice of appeal after about thirty days, and he explains that he did not think he needed to contact the clerk of court to file a notice of appeal because it was counsel's job to file the notice (*id*.).  Finally, Defendant states he later contacted counsel for assistance with the preparation of his § 2255 motion, and he told counsel that one of his grounds for relief would be that counsel was constitutionally ineffective for not filing a Notice of Appeal (*id.* at 5).  Defendant recalls that counsel responded that he did not file it because Defendant was cooperating and counsel thought Defendant was still dealing with the Government, a statement Defendant neither confirms nor denies.  Defendant reports that counsel also allegedly stated that "that may be the ground that works out for you" (*id*.).  Defendant indicates that both his father and mother can testify with respect to these events (*id*.).

   <u>The Evidentiary Hearing</u>

   Rachel Seaton-Verga was appointed to represent Defendant Coleman for the evidentiary hearing.  The parties invoked the rule of sequestration, but Defendant's former counsel Michel Stone stayed in the courtroom at the Government's request without objection by the defense.  Defendant, his father Anthony Livecche, and Michel Stone testified for the defense.

   Defendant testified that he wrote the letter attached to his § 2255 motion the day of sentencing, after he returned to the jail.  He explained that he mailed it directly to Mr. Stone after a corrections officer made a copy of the letter for him to retain.  He later sent this copy to his father

for safekeeping, along with other legal papers and other personal effects when he was transferred from the jail to a correctional institution.

Defendant testified that he met with counsel in person at the jail a day or two after sentencing, and that this was his only post-sentencing meeting with counsel. Defendant recalled that they discussed his appellate rights and that he advised counsel he wanted to appeal anything that was available to him to appeal. Defendant testified that during this meeting he reminded counsel that counsel had wanted to appeal the "gun issue" after the motion to suppress was denied. Defendant testified he was left with the impression that counsel would file a notice of appeal. He further testified that he was also hoping counsel would handle the appeal for him, although this was apparently not part of the representation agreement. Defendant's recollection was that Mr. Stone told him he would "look into" the appeal. Defendant denied ever telling his attorney that he wanted to forfeit his right to appeal, and he asserted that he always intended to preserve his right to appeal in order to raise the issues he now raises in his § 2255 motion. Lastly, Defendant explained that he did not call counsel from the jail because counsel did not have an "account" set up to receive calls from the jail, but Defendant used his father as an intermediary (i.e., to convey information to Mr. Stone).

Defendant's father Anthony Livecche confirmed that he had acted in Defendant's behalf as an intermediary between Defendant and Mr. Stone. When asked whether there were any conversations about Defendant's post-conviction options on November 7, 2012, the day of Defendant's sentencing, Mr. Livecche recalled that he, Defendant's mother, and Defendant's girlfriend spoke with Mr. Stone outside the courthouse after sentencing. Mr. Livecche recalled that counsel mentioned that Defendant wanted to appeal and did not know the issues on which to appeal. Mr. Livecche said that he agreed that there was no apparent basis for an appeal. Mr. Livecche also recalled that they talked only about Defendant's options.

Defendant's father further testified that after November 7, 2012, he had numerous conversations with his son in which Defendant mentioned an appeal and asked his father to please ask counsel to appeal. Mr. Livecche explained that at the time he was still making payments for Mr. Stone's legal services, but he was not really talking to Mr. Stone. He said he might have relayed notes or passed information from his son to Mr. Stone's office staff, but he never talked to Mr. Stone

directly. When specifically asked whether he had conveyed Defendant's inquiry about the notice of appeal to Mr. Stone's office, Mr. Livecche hesitantly answered that he had.

Defendant's former attorney, Michel L. Stone, was called as a defense witness. Mr. Stone acknowledged that it was fair to say that neither he nor his client was happy with the length of the sentence imposed. When asked whether he had conferred with his client after sentencing to discuss Defendant's options, counsel was unquestionably equivocal. He testified that since learning of Defendant's § 2255 motion he had been trying to remember when he and Defendant had spoken, and he noted that he had a vague memory of talking to Defendant in "this building" (i.e., the federal courthouse in Panama City, where Defendant's sentencing occurred), but he had no notes documenting a post-sentencing conversation with Defendant at the courthouse. Counsel testified that he did not recall any talk of a possible appeal, and he was unsure whether he conversed with Defendant at the courthouse following sentencing. Mr. Stone specifically remembered that he had conferred with Defendant <u>once</u> when Defendant was housed in the Washington County Jail, but he could not recall whether the jail visit was before or after Defendant's sentencing. Mr. Stone conceded that he did not make any notes in his file regarding the meeting(s) he had with his client at the jail, regardless of when the meeting(s) occurred.

Mr. Stone testified that he could not remember an instruction from Defendant to file a notice of appeal. He further testified that he can remember "thinking about" whether there were grounds for an appeal and what the appellate strategy might be, but he clarified that these thoughts did not amount to filing a notice of appeal because, in his opinion, there appeared to be no good appellate prospects. Counsel hesitated when he was asked whether he conferred with his client about the matter of an appeal. He testified that he did not recall telling Defendant that a notice of appeal would be filed; he also testified, however, that he was not sure he recalled telling Defendant that a notice of appeal would <u>not</u> be filed, "in so many words."

When asked whether he had ever followed up with Defendant to determine if he wished to waive his right to appeal, counsel acknowledged that he did not ask Defendant to "sign off on" a letter declining to appeal. Counsel indicated that he did not believe he and his client had any conversations about Defendant's desire with respect to an appeal, or anything else, after the meeting at the jail. Counsel could not specifically recall whether Defendant waived his right to an appeal,

and counsel seemed to allude to the fact that many issues had been waived in light of Defendant's guilty plea. Counsel nonetheless stated that he would have filed the notice of appeal if Defendant had wanted to appeal, even if he thought there were no grounds for appeal.

On re-direct examination, counsel was asked whether he consulted with Defendant to ensure that he did not want to file a notice of appeal. Counsel responded that he "[did not] know how to answer that." He said that he did not recall "going in with the mission" of securing Defendant's declination of an appeal, but that he went to the jail to discuss Defendant's entire situation. Counsel recalled with certainty that he never recommended an appeal and that Defendant "seemed to accept [his] reasoning."

Findings of Fact

The court has carefully considered the testimony presented at the evidentiary hearing and reviewed the entire record in this case. After doing so, the undersigned concludes that, although the case arguably presents a close question, relief is warranted on Defendant's claim.

Defendant testified that he wrote a letter to counsel the day of his sentencing, asking that counsel file a notice of appeal. To the extent Defendant actually wrote and mailed the letter to Mr. Stone,[2] this is not dispositive of the issue in light of Defendant's unequivocal testimony that he met with counsel at the Washington County Jail one to two days after he wrote the letter and verbally expressed his desire to appeal to counsel at that time. What is more, Defendant's desire for an appeal, regardless of whether such desire was ill-advised, was corroborated by his father's testimony.

Conversely, counsel has no recollection of any meaningful consultation with Defendant about an appeal. His testimony was equivocal and at times contradictory. Importantly, though, counsel testified at least twice that he recalled meeting with Defendant only once at the jail, and the evidence adduced at the evidentiary hearing strongly suggests that the meeting to which counsel referred occurred prior to sentencing. More specifically, records from Mr. Stone's case file relating to the issue of an appeal in Defendant's case—which records Mr. Stone provided in contemplation

---

[2] Mr. Stone testified he did not recall receiving this letter or seeing it prior to Defendant's filing it in the instant case. He also testified that he looked for this letter in his file but did not locate it, although he did locate two other handwritten letters from Defendant.

of the hearing and which were introduced during the hearing as Government's Exhibit A—include an email dated October 16, 2012, or approximately three weeks before sentencing, requesting that Mr. Stone's staff schedule a time for him to meet with Defendant. The email was sent the day after the draft PSR was disclosed (*se*e doc. 403, draft PSR, filed on October 15, 2012, at 7:14 p.m.), and thus it is logical to conclude that Mr. Stone went to the jail to discuss the draft PSR with his client, not to discuss the matter of an appeal. Additionally, counsel appears to have little, if any, recollection of visiting Defendant at the jail after sentencing, or what they might have discussed. More significantly, counsel has no documentation whatsoever to either indicate his client's intent with respect to pursuing an appeal or to support a finding that he had consulted with Defendant regarding the advantages and disadvantages of an appeal, a disturbing omission in any case in light of the importance of a criminal defendant's appellate rights.

The court agrees with the Government that under the circumstances of this case, if, in fact, Defendant sought to continue to cooperate with the Government,[3] it would not have been wise for Defendant to appeal. However, such is not the test. Even if it is unwise or disadvantageous to pursue an appeal, counsel must still advise his client of the advantages and disadvantages of taking an appeal and make a reasonable effort to discover his client's wishes. Likewise, under the prevailing law, an attorney's belief that there are no meritorious grounds for appeal does not excuse the attorney's failure to consult with his client about an appeal or his failure to follow a client's wishes.

In sum, on the record before it, the court cannot conclude that defense counsel fulfilled his obligation to meaningfully consult with his client about an appeal, or to ascertain and follow his client's wishes.[4] Therefore, regardless of whether an appeal would have been successful, or whether

---

[3] Defendant himself never testified on this point.

[4] As noted *supra*, Defendant testified that Mr. Stone came to see him at the jail one or two days after sentencing and that he told Mr. Stone he wished to appeal during this post-sentencing visit. It thus appears from Defendant's testimony that Mr. Stone must have visited Defendant at the jail on two occasions, once prior to sentencing (to review the draft PSR), and once after sentencing. Even assuming Mr. Stone did meet with Defendant at the jail after sentencing, however, the court's conclusion regarding counsel's dereliction of duty with respect to Defendant's appeal would not change. Stated simply, Mr. Stone does not recall that a second meeting occurred or, correspondingly, the nature of any discussions that might have occurred with Defendant at that time. Thus, there is nothing in the record to refute Defendant's testimony that he told Mr. Stone he wished to appeal during a post-sentencing meeting at the jail, or to

Defendant would have chosen to file an appeal after a meaningful consultation with counsel, Defendant is entitled to relief with respect to this portion of Ground Two of his § 2255 motion.

<u>Defendant's Remedy</u>

The proper procedure when an out-of-time appeal is warranted is: (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be reimposed; (3) upon reimposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is fourteen days, as dictated by Federal Rule of Appellate Procedure 4(b)(1)(A)(i). <u>United States v. Phillips</u>, 225 F.3d 1198, 1201 (11th Cir. 2000); <u>United States v. Parrish</u>, 427 F.3d 1345, 1347 (11th Cir. 2005); <u>United States v. Palacios</u>, 516 F. App'x 734 (11th Cir. 2013). Appointment of counsel will presumably also be warranted given Defendant's custodial status.

Defendant's remaining claims should be dismissed without prejudice to their reassertion, if appropriate, upon conclusion of his direct appeal. *See* <u>McIver v. United States</u>, 307 F.3d 1327, 1331 n.2 (11th Cir. 2002). An order granting a § 2255 petition, and reimposing sentence, will reset to zero the counter of collateral attacks pursued and "[will] not render subsequent collateral proceedings 'second or successive.'" <u>McIver</u>, 307 F.3d at 1332 (quoting <u>Shepeck v. United States</u>, 150 F.3d 800, 801 (7th Cir. 1998)).

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1. The amended motion to vacate, set aside, or correct sentence (doc. 642) be **GRANTED** with respect to the portion of Ground Two of Defendant's claim that counsel was constitutionally ineffective for his failure to file an appeal, and that the remaining claims be **DISMISSED without prejudice**.

2. Defendant's criminal judgment be vacated and the same sentence reimposed.

3. Counsel be appointed for the purpose of appeal (or at a minimum to consult with Defendant with respect to his desire to appeal).

---

support a finding that any meaningful consultation about an appeal took place.

At Pensacola, Florida, this 23<u>rd</u> day of February 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**